UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KATHLEEN L. LIEBAU,

      Plaintiff,

v.

DYKEMA GOSSETT, PLLC, a Michigan
professional limited liability company,

      Defendant.

Case No:  21-cv-11823

Judge Shalina D. Kumar

Magistrate Judge David R. Grand

_____ /

STERLING ATTORNEYS AT LAW, P.C.
By: Raymond J. Sterling (P34456)
     Brian J. Farrar (P79404)
Attorneys for Plaintiff
33 Bloomfield Hills Pkwy. Ste 250
Bloomfield Hills, MI 48304
(248) 644-1500
rsterling@sterlingattorneys.com
bfarrar@sterlingattorneys.com

KIENBAUM HARDY VIVIANO
PELTON & FORREST, P.L.C.
By: Elizabeth Hardy (P37426)
     David Porter (P76785)
Attorneys for Defendant
280 N. Old Woodward Ave., Ste 400
Birmingham, MI  48009
(248) 645-0000
ehardy@khvpf.com
dporter@khvpf.com

_____ /

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant Dykema Gossett, PLLC, by its counsel, Kienbaum Hardy Viviano Pelton & Forrest, P.L.C. moves this Court under Federal Rule of Civil Procedure 56 for summary judgment on plaintiff Kathleen Liebau's claims, and in support says:

1.   On August 6, 2021, Liebau sued her former employer, Dykema Gossett, alleging age discrimination and retaliation claims. The parties completed discovery on June 30, 2022.

3.   Dykema Gossett now moves for summary judgment because the evidence, viewed in Liebau's favor, entitles the firm to judgment as a matter of law on each of her claims.

4.   As required by Local Rule 7.1, Defendant sought Liebau's concurrence in this request for relief by email on July 29, 2022. She did not concur.

For these reasons and those explained in the accompanying brief, Dykema Gossett requests that this Court grant it summary judgment on Liebau's claims.

Respectfully submitted,

KIENBAUM HARDY VIVIANO
  PELTON & FORREST, P.L.C.

By: */s/ Elizabeth Hardy*
      Elizabeth Hardy (P37426)
      David Porter (P76785)
Attorneys for Defendant
280 N. Old Woodward Ave., Suite 400
Birmingham, MI  48009
(248) 645-0000
ehardy@khvpf.com
Dated:  August 1, 2022          dporter@khvpf.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KATHLEEN L. LIEBAU,

      Plaintiff,

v.

DYKEMA GOSSETT, PLLC, a Michigan
professional limited liability company,

      Defendant.

Case No:  21-cv-11823

Judge Shalina D. Kumar

Magistrate Judge David R. Grand

_____/

STERLING ATTORNEYS AT LAW, P.C.
By: Raymond J. Sterling (P34456)
     Brian J. Farrar (P79404)
Attorneys for Plaintiff
33 Bloomfield Hills Pkwy. Ste 250
Bloomfield Hills, MI 48304
(248) 644-1500
rsterling@sterlingattorneys.com
bfarrar@sterlingattorneys.com

KIENBAUM HARDY VIVIANO
PELTON & FORREST, P.L.C.
By: Elizabeth Hardy (P37426)
     David Porter (P76785)
Attorneys for Defendant
280 N. Old Woodward Ave., Ste 400
Birmingham, MI  48009
(248) 645-0000
ehardy@khvpf.com
dporter@khvpf.com

_____/

**BRIEF IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

<u>Page</u>

Index of Authorities ................................................................. iii

Concise Statement of Issues Presented .................................... vi

Controlling or Most Appropriate Authority.............................. vii

Introduction ..............................................................................1

Statement of Material Facts .......................................................2

    Kathy Liebau grows comfortable in a specialized, but time-limited, administrative assistant role at Dykema Gossett..................................2

    Liebau's transition to new projects exposes serious shortcomings in her attitude and professionalism. ...................................................3

    The firm places Liebau on a 90-day probation....................................7

    Liebau's pattern of misconduct continues while on probation. .........10

    At the end of Liebau's unsuccessful probationary term, the firm terminates her employment. ................................................11

    Liebau accuses Dykema of age discrimination. .................................12

Argument...................................................................................13

    I.    Dykema Gossett is entitled to summary judgment on Liebau's age-discrimination claims....................................................13

        A.  Liebau cannot make out a prima facie case of age discrimination because there is no evidence that she was treated differently than younger, similarly situated individuals. ...................14

        B.  In any event, Liebau's age-discrimination claims fail because she cannot show that Dykema Gossett's justification was pretext for unlawful discrimination.....................................18

    II.  Dykema Gossett is entitled to summary judgment on Liebau's retaliation claims........................................................21

A. Liebau cannot make out a prima facie case of retaliation because there is no evidence from which a reasonable jury could infer causation. ...........................................................21

B. In any event, Liebau's retaliation claims fail because she has not shown that Dykema Gossett's stated justification was pretext for unlawful retaliation............................................24

Conclusion and Relief Requested ...........................................................25

# INDEX OF AUTHORITIES

Page

**Cases**

*Beard v. AAA of Michigan*,
  593 F. App'x 447 (6th Cir. 2014) .................................................................. 23, 24

*Blizzard v. Marion Tech. Coll.*
  698 F.3d 275 (6th Cir. 2012) ................................................................................. 20

*Chandler v. Specialty Tires of Am. (Tennessee), Inc.*,
  283 F.3d 818 (6th Cir. 2002) ................................................................................. 22

*Chen v. Dow Chem. Co.*,
  580 F.3d 394 (6th Cir. 2009) ................................................................................. 18

*Clay v. United Parcel Serv, Inc*,
  501 F.3d 695 (6th Cir. 2007) .......................................................................... 21, 24

*Cooper v. City of N. Olmsted*,
  795 F.2d 1265 (6th Cir. 1986) ............................................................................... 23

*DeFlaviis v. Lord & Taylor, Inc.*,
  599 N.W.2d 661 (Mich. Ct. App. 1997) ............................................................... 21

*Gantt v. Wilson Sporting Goods Co.*,
  143 F.3d 1042 (6th Cir. 1998) ............................................................................... 14

*Garg v. Macomb Cty. Cmty. Mental Health Servs.*,
  696 N.W.2d 646 (Mich. 2005) ........................................................................ 22, 23

*Geiger v. Tower Auto*,
  579 F.3d 614 (6th Cir. 2009) ................................................................................. 13

*Gray v. Toshiba Am. Consumer Prods.*,
  263 F.3d 595 (6th Cir. 2001) ................................................................................. 16

*Grosjean v. First Energy Corp*,
  349 F.3d 332 (6th Cir. 2003) ................................................................................. 15

*Gross v. FBL Fin. Servs., Inc.*,
  557 U.S. 167 (2009) ...........................................................................................18

*Hagedorn v. Veritas Software Corp*,
  129 F. App'x 1000 (6th Cir. 2005).....................................................................14

*Johnson-Romaker v. Kroger Limited P'ship One*,
  609 F. Supp. 2d 719 (N.D. Ohio 2009) ..............................................................15

*Joseph v. Owens & Minor Distrib., Inc.*,
  594 F. App'x 29 (2d Cir. 2015)...........................................................................17

*Kesler v. Barris, Sott, Denn & Driker, PLLC*,
  482 F. Supp. 2d 886 (E.D. Mich. 2007)..............................................................20

*Leadbetter v. Gilley*,
  385 F.3d 683 (6th Cir. 2004) ..............................................................................17

*McDonnell Douglas Corp. v. Green*,
  411 U.S. 792 (1973) ...........................................................................................13

*Mitchell v. Toledo Hosp.*,
  964 F.2d 577 (6th Cir. 1992) ..............................................................................15

*Morgan v. Hilti, Inc.*,
  108 F.3d 1319 (10th Cir. 1997)...........................................................................23

*Nationwide Trade Inc v United States*,
  No. 21-cv-10275, 2022 WL 1760702 (ED Mich, May 31, 2022) .......................13

*Rouch World, LLC v. Dep't of Civil Rights*,
  No. 162482 (Mich. July 28, 2022) ......................................................................18

*Smith v. Leggett Wire Co.*,
  220 F.3d 752 (6th Cir. 2000)...............................................................................15

*Spengler v. Worthington Cylinders*,
  615 F.3d 481 (6th Cir. 2010)...............................................................................21

*Swierkiewicz v. Sorema N.A.*,
  534 U.S. 506 (2002) ...........................................................................................14

iv

*Tingle v. Arbors at Hilliard*,
  692 F.3d 523 (6th Cir. 2012) ...................................................................24

*Town v. Michigan Bell Tel. Co.*,
  568 N.W.2d 688 (Mich. 1997) ...............................................................13

*Wilcoxon v. Minnesota Min. & Mfg Co.*,
  597 N.W.2d 250 (Mich. Ct. App. 1999) ...............................................14

## CONCISE STATEMENT OF ISSUES PRESENTED

1.      Whether Dykema Gossett is entitled to summary judgment on plaintiff's race discrimination claims.

2.      Whether Dykema Gossett is entitled to summary judgment on plaintiff's retaliation claims.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

Issue I:     *Grosjean v. First Energy Corp*, 349 F.3d 332 (6th Cir. 2003)

*Smith v. Leggett Wire Co.*, 220 F.3d 752 (6th Cir. 2000)

*Mitchell v Toledo Hosp*, 964 F.2d 577 (6th Cir. 1992)


Issue II:    *Clay v. United Parcel Serv, Inc*, 501 F.3d 695 (6th Cir. 2007)

*Chandler v. Specialty Tires of Am. (Tennessee), Inc.*,
  283 F.3d 818 (6th Cir. 2002)

*Garg v. Macomb Cty. Cmty. Mental Health Servs.*,
  696 N.W.2d 646, (Mich. 2005)

*Beard v. AAA of Michigan*, 593 F. App'x 447 (6th Cir. 2014)

## INTRODUCTION

Kathy Liebau, a secretary at the law firm Dykema Gossett, could not accept direction from those in charge. In the words of Clay Guise, a senior attorney whom Liebau revered, Liebau insisted on doing things "her way," "rowing against the stream." Eventually, her resistance to authority—noted by Guise, Chelsea Larsen (a staff attorney on Guise's team) and Sue Choma (Liebau's supervisor)—created so much "dysfunction" that it landed her on probation and, when that proved unsuccessful, resulted in her termination.

Liebau now claims that her termination was discrimination and retaliation. But Liebau, who was only 53 years old when she was terminated, was replaced by someone who was 3 years *older* than her. What's more, she accuses Larsen of age-based animus even though she had no input into the discharge decision. As for the actual decisionmaker, Sue Choma, Liebau has no evidence that she treated Liebau differently than younger, similarly situated coworkers. Nor could Liebau's last-minute accusation of age discrimination—an obvious attempt to plant the seeds of a retaliation claim—derail the disciplinary process long under way when she complained. The fact is, Liebau was terminated because of her poor attitude, not because of her age or her complaints. Dykema Gossett therefore asks this Court to grant summary judgment in its favor and dismiss this lawsuit with prejudice.

# STATEMENT OF MATERIAL FACTS

**Kathy Liebau grows comfortable in a specialized, but time-limited, administrative assistant role at Dykema Gossett.**

1. Dykema Gossett is a Detroit-based law firm that provides legal services to clients across the country. To provide high-quality, cost-effective services, the firm relies on a dedicated team of support staff, which includes Administrative Assistants ("AA"). As the title suggests, AAs "[a]ssist attorneys and paralegals," performing a variety of administrative tasks depending on the needs of the professional they support. (Ex. 7, AA Job Description.) Though they often interact with attorneys and paralegals, administrative assistants report to an Office Administrator, who supervises their workload, performance, and compliance with firm policies and expectations. (Ex. 3, Choma Dep., pp. 11–12, 67.)

2. Plaintiff Kathy Liebau was an AA in the firm's Bloomfield Hills office. She reported to Office Administrator, Susan Choma. (Ex. 1, Liebau Dep. I, p. 52.) Liebau's duties as an AA varied during her career. In her early years, she performed traditional administrative tasks. (Ex. 3, Choma Dep., p. 38.) Around 2006, her duties expanded to include some less traditional AA functions when the firm assigned Liebau to assist Clay Guise, an attorney managing large groups of product-defect cases against a carmaker. (Ex. 2, Liebau Dep. II, p. 182; Ex. 3, Choma Dep. p. 38.) Liebau helped by drafting standard responses to discovery requests, sending initial requests for documents to the client, and providing other logistical support. (Ex. 1,

Liebau Dep. I, p. 49.) Although some of these duties resembled paralegal duties, Liebau always remained an AA and reported to Choma, the supervisor of the firm's AAs in its Bloomfield Hills office. Liebau, in fact, never applied for a paralegal position since, in her mind, she already was a paralegal. (*Id*. at 53.)

**Liebau's transition to new projects exposes serious shortcomings in her attitude and professionalism.**

3. When Guise forecasted in 2017 that his projects would soon stop generating enough work to keep Liebau busy (*see* Ex. 8, 2017 Annual Review; Ex. 2, Liebau Dep. II, p. 182), Choma met with Liebau to advise that she needed to "reinvent herself" by re-learning traditional AA tasks if she was to stay busy enough to remain employed. (Ex. 3, Choma Dep., p. 36–40.)

4. Choma's advice fell on deaf ears. After several years of assisting on Guise's product-defect cases, Liebau could not bring herself to perform traditional AA duties consistent with her job classification. (Ex. 1, Liebau Dep.  I, pp. 49, 53.) When Choma found a temporary, but traditional AA assignment for Liebau in the Detroit Office, she fought the decision by complaining so loudly in front of the Detroit staff that she lasted only a few days. (Ex. 3, Choma Dep., p. 100–101.)

5. Then an opportunity arose for the firm – and Liebau – in Fall 2017. The firm acquired a new engagement centered on California's new lemon law that allowed aggrieved owners to sue carmakers and recoup their attorneys' fees. Seeing a spike in litigation costs, one carmaker hired Dykema with the goal of resolving

cases as quickly as possible, ideally before answering the complaint, to keep costs low. (Ex. 5, Guise Dep., p. 19; Ex. 23, Sept. 28, 2017 Liebau Email.)

6. Hopeful that Liebau's background would make her a good fit for this work, the firm assigned Liebau to assist Guise, the project's managing partner, and staff attorney Larsen. Guise and Liebau had a strong working relationship. Although her performance had started to slip in roughly 2014 when Guise noticed that she had difficulty accepting new direction and working cooperatively, Guise hoped she could adapt to this new work and learn to accept direction from Larsen. (Ex. 5, Guise Dep., pp. 33–35.) Larsen was responsible for the day-to-day management of cases and Liebau's direct contact on the new project. (*Id*. at 27, 36–37; Ex. 4, Larsen Dep., p. 10.) She had not worked with Liebau before, but considered her a "work friend[]." (Ex. 4, Larsen Dep., pp. 18–19.) Guise's and Larsen's primary AA, Shannon Stewart, was also on the team in a different administrative capacity. (*Id.* at 15.) And two other support staff periodically assisted with some of Liebau's tasks on an overflow basis: paralegal Robin Kowalski and independent contractor Lisa Myers. (*Id*. at 11–15.)

7. Liebau's growing propensity to resist authority and her reluctance to accept change and new direction soon became a problem in her work on the California warranty project. Although this project was somewhat similar to Liebau's previous ones, it still involved a "learning curve." (Ex. 4, 2018 Larsen Feedback.) Larsen and

4

Guise placed a higher value on efficiency and precluded Liebau from working overtime unless they approved it. (Ex. 19, Feb. 3, 2018 Email. Ex. 11, May 30, 2018 Email.) Despite these expectations, Liebau continued to flout the overtime restrictions, working on holidays, weekends, and through lunch to bill the firm for overtime. (Ex. 12, Feb. 5, 2018 Memo.)

8. Liebau also struggled with time management, refusing to take direction from Larsen on what tasks were—and were not—necessary to accomplish the client's litigation goals. Larsen identified this as an opportunity for improvement in Liebau's 2018 feedback: "Kathy has had a bit of difficulty prioritizing tasks on this new project. Initially she was spending time on non-value-added tasks at the expense of finishing case assessment summaries in a timely manner. She is showing improvement in this area also." (Ex. 9, 2018 Larsen Feedback.)

9. Guise was more blunt. He observed that Liebau "can be resistant to ideas that are different than hers regarding procedure and this is an area for improvement." (Ex. 13, 2018 Guise Feedback.) He suggested that she "can do a better job providing [Larsen] what [Larsen] needs to draft assessments." (*Id*.) But Liebau ignored the course correction, insisting that she knew better. This type of attitude caused Guise to conclude that Liebau was "swimming against the stream" and creating "dysfunction in the team." (Ex. 5, Guise Dep., pp. 33–35, 39–45.) He complained

directly to Liebau about her work, as well as to Larsen and perhaps Choma. (*Id*. at 42.)[1]

10. Sue Choma had the same experiences with Liebau as Guise. Almost as soon as Liebau transitioned to the California warranty project, she began ignoring workplace rules. She started coming in late and not calling in beforehand, working unauthorized overtime, and working from home without authorization—all of which were prohibited for AAs like Liebau. (*See* Ex. 14, Jan. 2018 Meeting Notes; Ex. 12, Feb. 5, 2018 Memo.) In January 2018, after two-and-a-half months of Liebau arriving late to work virtually every day, Choma scheduled a counseling session to remind Liebau of the firm's expectations. (*Id*.) Liebau acknowledged that she had been late and working from home in violation of Choma's instructions, but she refused to accept responsibility. As recounted in Liebau's annual review, Liebau was "confrontational" with Choma and "gave [her] a lot of push-back, seemingly needing to have the last word." (Ex. 15, 2018 Annual Review.)[2]

---

[1] That attitude continued even after her termination, refusing to return Dykema Gossett property (emails and client documents) that she took for the purpose of advancing her claims against Dykema. Liebau was recently rebuffed by Magistrate Judge David Grand, who, as a sanction for her misconduct, ordered her to destroy all such documents and prohibited her from relying on them in this litigation. (Order, ECF No. 18, PageID.231.)

[2] Liebau's resistance toward Choma went as far as refusing to acknowledge her supervisory authority. To this day, Liebau refuses to acknowledge that Choma was her supervisor. (Ex. 2, Liebau Dep. II, p. 221 ("She wasn't my -- she wasn't my

**The firm places Liebau on a 90-day probation.**

11. Although Liebau continued to provide satisfactory work product, her poor attitude and resistance to authority eventually led to her being placed on a formal performance improvement plan. The impetus occurred in April 2019, when Liebau was covering for Larsen's primary administrative assistant, Shannon Stewart, who was away on vacation. (Ex. 4, Larsen Dep., p. 28; Ex. 16, May 9, 2019 Memo.) At the start of the week, Larsen instructed Liebau my email to run a "conflict check"— a routine, but important and time-sensitive administrative task that ensures the firm has no conflict of interest before taking a case. (Ex. 16, May 9, 2019 Memo.) Liebau did not turn to the task for three days, at which point she returned to Larsen asking if she could leave it for Stewart to complete the next week because she did not have a necessary piece of information. (*Id.*) Larsen said "no," in no uncertain terms, and told her to get the information from Guise. (*Id.*; *see also* Liebau Dep. II, pp. 259–261 ("[S]he said, 'I think it's Clay on all the switch stuff. Go ask him.' ").)

12. Liebau ignored Larsen's directive. (Ex. 2, Liebau Dep. II, p. 262.) She instead waited until the end of the next day—shortly before the close of business— to email Stewart, telling her that she had "saved" the conflict check for her. (*Id.* at 262–63; Ex. 16, May 9, 2019 Memo.) Liebau's decision drew a sharp rebuke from

---

supervisor. My supervisors[ were] Clay Guise, Brittany Schultz, [and] Lisa Brown for a while.").)

Larsen, who wrote to Liebau that "[i]t is not acceptable that you chose to save this for [Stewart] despite my instructions not to do so." (Ex. 16, May 9, 2019 Memo.)

13. Larsen related this incident to Choma, who consulted with the firm's Chief Human Resources Officer, before deciding to place Liebau on a 90-day probation. (Ex. 3, Choma Dep. p. 49-50; Ex. 6, Clinton Dep., pp. 54–55.) Choma met with Liebau to discuss the incident and her probationary status. Choma outlined the reasons for her probationary status in a written memo, which ended with a clear statement of the firm's expectations:

> Your performance and adherence to stated directives must immediately improve and be maintained at a satisfactory level. If there is no improvement observed at any time during this 90-day period, or thereafter, your employment will be terminated. [May 9, 2019 Memo.]

14. Larsen, who did not ask Choma to discipline Liebau, did not know that Choma placed Liebau on probation until roughly a month later. (Ex. 4, Larsen Dep., p. 55.) On June 14, 2019, Larsen stopped by Liebau's desk to discuss work. (*Id.* at 47-48.) During the conversation, Liebau told Larsen for the first time that she had been correcting errors in Kowalski's work before submitting it to Larsen. (*Id.* at 53.) When Larsen asked for more information, Liebau threw her hands up and refused to explain, claiming that she was on probation because of a "fake conversation" that Larsen had made up, referencing the conflict-check instruction that Liebau ignored. (*Id.* at 53.) Liebau accused Larsen of lying before storming off, exclaiming, "I can't talk to you." (*Id.* at 49–50.)

8

15. Larsen felt compelled to report the interaction to Choma. (*Id.* at 50.) All three met several days later to discuss the incident. It was, as Choma put it, an "awful, awful meeting." (Ex. 3, Choma Dep., p. 67.) From the outset, Liebau was disrespectful and confrontational, calling both Choma and Liebau "honey." (*Id.* at 66–67; Ex. 4, Larsen Dep. p. 60; Ex. 2, Liebau Dep. II, p. 289; Ex. 17, July 1, 2019 Memo.) She mocked Larsen, repeating her statements in a sarcastic, condescending tone. (Ex. 3, Choma Dep., p. 66–67; Ex. 17, July 1, 2019 Memo.) Choma cautioned Liebau that she was being unprofessional. (Ex. 3, Choma Dep., p. 66–67.) Asked about her outburst, Liebau insisted that Larsen never instructed her to get the information she needed from Guise. (Ex. 17, July 1, 2019 Memo.) Liebau's position contradicted the one she took in a contemporaneous email in which she recalled Larsen telling her to "go ask him," referring to Guise. (Ex. 18, May 10, 2019 Email.)

16. Then, in what appeared to Choma as Liebau "grasping for straws," Liebau suggested for the first time that Larsen's motivation was age discrimination, citing an incident four years earlier, in 2015, involving Liebau's 50th birthday. (Ex. 3, Choma Dep., pp. 69–70.) Liebau complained that four years ago, Larsen and another coworker had decorated Liebau's desk with adult diapers, toy pill bottles, and a wheelchair as a light-hearted gesture to mark Liebau's milestone birthday— something they and others had done for other coworkers without complaint. (Ex. 4, Larsen Dep., pp. 89–92; Ex. 5, Guise Dep., pp. 86–89.) Liebau's birthday was no

9

exception. By all accounts, Liebau acted happy and celebratory in response to the gesture. (Ex. 4, Larsen Dep. p. 90.) Even Liebau admits she never complained about the gesture—or suggested any age-based animus by Larsen—until the June 18, 2019 meeting. (Ex. 1, Liebau Dep. I, p. 85–89; Ex. 4, Larsen Dep. p. 87; Ex. 3, Choma Dep., p. 70.)

17. Larsen was surprised because Liebau "seemed to appreciate that [they] were celebrating her birthday at that time." (Ex. 4, Larsen Dep., p. 90.) She assured Liebau that she did not mean to offend her and that if she "had gotten any kind of inkling that [Liebau] was upset," she "would have felt badly and tried to do something about it." (*Id.*) When Liebau mentioned for the first time that she was bothered by the wheelchair being stored in a workstation near hers, Choma and Larsen agreed to remove it, which they did that day. (Ex. 3, Choma Dep., p. 74.)

**Liebau's pattern of misconduct continues while on probation.**

18. Liebau's unprofessional conduct during the June 18th meeting led to another formal disciplinary meeting on July 1, 2019. Choma provided Liebau a memo summarizing the events of June 18th, which she reviewed but again refused to sign. (Ex. 17, July 1, 2019 Memo.) The memo cautioned Liebau:

> Due to ongoing incidents of misconduct, you are currently not on a trajectory to successfully complete your probation. This Memorandum will provide final notice to you that your attitude and workplace conduct must improve immediately, including demonstrating respect for your supervisor and Ms. Larsen in all of your communications.

19. Despite the clear warning, Liebau's attitude problems continued. During a scheduled vacation, Liebau identified Stewart as her out-of-office contact. (Ex. 19, Out of Office Email Exchange.) But Stewart was not in the office for several of those days, either–a fact that Stewart told Liebau about before she left. (*Id*.) When Choma asked Liebau why she did not fix her out of office message, she flippantly replied: "I cannot incur overtime." (Ex. 24, Out of Office Email Exchange.) In a follow-up email, Choma stated that her excuse was unacceptable. (*Id*.) She also noted several more timekeeping and attendance policy infractions. (*Id*.) She ended by *again* reminding Liebau "of [her] probationary employment status and the importance of complying with the firm's rules and expected standards of conduct." (*Id*.)

**At the end of Liebau's unsuccessful probationary term, the firm terminates her employment.**

20. It was to no avail. Several weeks later, Choma discovered two more similar timekeeping infractions, confirming for Choma that Liebau "was really making no effort to comply" with the terms of her probation. (Ex. 3, Choma Dep., pp. 83–86.) At the end of her probationary term, in consultation with the firm's Chief Human Resources Officer, Ayanna Clinton, concluded that Liebau was making no effort to demonstrate a commitment to following the firm's directives. (*Id*. at 89

("There was just . . . no evidence during this probationary period that she was on a trajectory to succeed with probation.").)[3]

21.  With Clinton's approval, Choma decided to terminate Liebau's employment because of her "her overall attitude, just uncooperative, not seeming to want to make the necessary changes to successfully meet the requirements of her probation." (*Id*. at 92; Ex. 6, Clinton Dep., pp. 23–25, 50.) As stated in the termination letter, the firm terminated Liebau's employment because she failed to "maintain professional and respectful conduct," "comply with firm policies and procedures," and "demonstrate satisfactory performance improvement," all of which the firm previously addressed in the series of performance-improvement memos and meetings (Ex. 20, Termination Letter.) Later that month, the firm hired Liebau's replacement, Anne Murphy. She was 56 years old—three years *older* than Liebau. (Ex. 22, Diana Marshall Dec. ¶ 3; Ex. 1, Liebau Dep. I, p. 8.)

**Liebau accuses Dykema of age discrimination.**

22.  After exhausting her administrative remedies, Liebau sued Dykema alleging two counts of age discrimination, one under the federal Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq*., and another under Michigan's Civil

---

[3] For example, on the day the firm terminated Liebau's employment, she was shopping for a couch online during work time—time she insisted she had too little of to complete all the duties assigned to her. (*Compare* Choma Dep., pp. 94–96, *with* Liebau Dep. II, p. 262 ("[W]e are a very busy, busy project.").)

Rights Act, Mich. Comp. Laws §§ 37.2201, *et seq*. Although Liebau did not bring separate counts for retaliation, two paragraphs in her Complaint alleged that her firing was retaliation under federal and state law. (Compl., ¶¶ 35, 45.) With discovery closed, the firm now moves for summary judgment on all claims.[4]

## ARGUMENT

**I.    Dykema Gossett is entitled to summary judgment on Liebau's age-discrimination claims.**

Liebau alleges that the firm's decision to terminate her employment is age discrimination under federal and state law. In cases involving no direct evidence of discrimination, such as this one, both sources of law require Liebau to satisfy the familiar three-step *McDonnell Douglas* framework. *Geiger v. Tower Auto*, 579 F.3d 614, 622 (6th Cir. 2009); *Town v. Michigan Bell Tel. Co.*, 568 N.W.2d 688 (Mich. 1997). First, Liebau must "establish a prima facie case of . . . [age] discrimination." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If she succeeds there, the burden shifts to the firm "to articulate some legitimate, nondiscriminatory reason for [her termination]." *Id*. Liebau must then prove that the firm's stated reason is pretext for unlawful age discrimination.  *Id*. at 804.

Liebau's claims fail at first and third step of the analysis.

---

[4] The legal standard for granting summary judgment under Fed. R. Civ. P. 56 is well known and unnecessary to repeat here. *See Nationwide Trade Inc v United States*, No. 21-cv-10275, 2022 WL 1760702, at *4 (ED Mich, May 31, 2022) (Kumar, J.).

**A.**    **Liebau cannot make out a prima facie case of age discrimination because there is no evidence that she was treated differently than younger, similarly situated individuals.**

To make out a prima facie case of age discrimination, Liebau must show, among other things, that she suffered an adverse employment action under "circumstances that support an inference of discrimination." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002). She can do that by showing that the firm (1) replaced her with a substantially younger person or (2) treated her differently than a substantially younger, similarly situated employee when it fired her. *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1048 (6th Cir. 1998); *Wilcoxon v. Minnesota Min. & Mfg Co.*, 597 N.W.2d 250, 257 (Mich. Ct. App. 1999).

The first is a nonstarter, as Liebau's replacement, Anne Murphy, is three years *older* than Liebau. (Ex. 22, Marshall Dec. ¶ 3.)

The second avenue is a dead end because she lacks a proper comparator—a "substantially younger" coworker who was "similarly situated" to her but who was not fired. The only comparator Liebau offers is a paralegal, Robin Kowalski. (Ex. 1, Liebau Dep I, p. 127.) But she is not a proper comparator for two reasons.

First, she is not "substantially younger" than Liebau. *See Hagedorn v Veritas Software Corp*, 129 F. App'x 1000, 1002 (6th Cir. 2005) (holding that plaintiff must show "less favorable treatment compared to a similarly situated *and substantially younger* individual" (emphasis added)). Kowalski is only four years younger than

Liebau (*see* Ex. 22, Marshall Dec. ¶ 3), which, in the Sixth Circuit, is not enough to infer age discrimination. *See Grosjean v. First Energy Corp*, 349 F.3d 332, 340 (6th Cir. 2003) (establishing a bright line rule that "an age difference of six years or less" is "not significant"). For that reason alone, her claim fails.

Second, Kowalski is not "similarly situated" to Liebau. To be "similarly situated" a comparator must share in all relevant aspects of employment "without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Smith v. Leggett Wire Co.*, 220 F.3d 752, 762 (6th Cir. 2000). That means they must share the same supervisor and relevant job standards, and they must engage in the same conduct that prompted the adverse action. *Mitchell v Toledo Hosp*, 964 F.2d 577, 583 (6th Cir. 1992).

But Liebau and Kowalski differ in almost every material respect. Kowalski has a different job title (paralegal) and a different supervisor (Sarah Staup). (Ex. 1, Liebau Dep. I, pp. 50–51; Ex. 3, Choma Dep., p. 11.) Choma, who was Liebau's direct supervisor and the decision maker, did not supervise Kowalski. (Ex. 3, Choma Dep., p. 98; Ex. 21, Choma Dec. ¶ 3.) As a result, she was not responsible for managing Kowalski's performance or adherence to firm policies. Without a shared supervisor-decisionmaker, it is impossible to infer discriminatory animus from Choma's treatment of Liebau as compared to Kowalski. *See Johnson-Romaker v. Kroger Limited P'ship One*, 609 F. Supp. 2d 719, 731 n.5 (N.D. Ohio 2009)

15

(explaining that the Sixth Circuit "considers the parties comparable if they shared an ultimate supervisor, or if similar people participated in the disciplinary processes of both the protected and non-protected employees[.]").

Even setting aside that critical distinction, other differences set Kowalski apart. True, Kowalski worked on the California warranty (i.e., lemon law) project, but not in the same way and to the same degree as Liebau. Kowalski spent a fraction of her time assisting on the lemon law project. Kowalski helped with a discrete aspect of the project, drafting assessments of vehicle warranty history, and only in an "overflow capacity." (Ex. 4, Larsen Dep., pp 11–12.) Liebau, on the other hand, was "dedicated to the project" full time and had a wider range of duties on the project. (*Id.*) Besides drafting most of the warranty history assessments, Liebau also tracked all the cases, managed deadlines, communicated with co-counsel, ran database queries, and calculated repurchase figures. (*Id.*)

Nor does Liebau claim that Kowalski "engaged in the same conduct" that led to her termination. *Gray v. Toshiba Am. Consumer Prods.*, 263 F.3d 595, 599 (6th Cir. 2001). Liebau claims that Kowalski made mistakes in her work product without unfavorable treatment from Larsen. (Ex. 2, Liebau Dep. II, pp. 165–66.) But Liebau did not suffer an adverse employment action because she made typos or similar mistakes. Liebau was fired because she failed to "maintain professional and respectful conduct," "comply with firm policies and procedures," and "demonstrate

satisfactory performance improvement." There is no evidence that Kowalski engaged that kind of conduct. In fact, Liebau testified she had "no knowledge or anything about what else [Kowalski] did." (*Id*. at 186–87.)

In short, Kowalski held a different title, answered to a different supervisor, and performed only some of the tasks Liebau did at much smaller scale while also managing a slate of other responsibilities outside Liebau's scope of employment. *See Leadbetter v. Gilley*, 385 F.3d 683, 691 (6th Cir. 2004) ("Differences in job title, responsibilities, experience, and work record can be used to determine whether two employees are similarly situated."). Add in the fact that the alleged disparate treatment was from a non-decisionmaker, Larsen (*see* Ex. 4, Larsen Dep, pp. 26–27, 80–82), and the already attenuated connection to Liebau's termination all but disappears. *See Joseph v. Owens & Minor Distrib., Inc.*, 594 F. App'x 29, 4 (2d Cir. 2015) ("Even assuming that the discriminatory motive of an employee without supervisory authority can serve as the basis for a discriminatory termination claim, it cannot do so where, as here, no evidence in the record links that employee to the employment decision.").

**B.     In any event, Liebau's age-discrimination claims fail because she cannot show that Dykema Gossett's justification was pretext for unlawful discrimination.**

Even if Liebau could establish a prima facie case of age discrimination, the firm has articulated legitimate nondiscriminatory reasons for her termination that she cannot establish was pretext for unlawful discrimination.

Those reasons, again, were that Liebau failed to "maintain professional and respectful conduct," "comply with firm policies and procedures," and "demonstrate satisfactory performance improvement," all of which the firm addressed in the series of performance memos and meetings (Ex. 20, Termination Letter.)

To establish pretext and survive summary judgment, Liebau must submit admissible evidence to prove her age, not the articulated reasons, was the true, "but-for" reason for her discharge. *See Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009); *see also Gross v. FBL Fin. Servs., Inc*., 557 U.S. 167 (2009) (establishing "but-for" causation under ADEA); *Rouch World, LLC v. Dep't of Civil Rights*, No. 162482 (Mich. July 28, 2022), slip op, at 17 ("[C]ausation is established where the discriminatory action would not have occurred but for the [protected characteristic] of the complainant."). Plaintiffs typically establish pretext by showing that the employer's stated reasons (1) are baseless, (2) did not motivate the employer's action, or (3) were too weak to motivate the employer's action. *Chen*, 580 F.3d at 400. Liebau cannot make any of these showings.

First, the firm's stated reasons are all supported by documentary evidence that Liebau does not dispute. Her unprofessional and disrespectful conduct is catalogued in several performance-improvement memos and emails. (Ex. 16, May 9, 2019 Memo; Ex. 17, July 1, 2019 Memo; Ex. 19 OOO Email.) Liebau had ample opportunity to challenge those assessments at the time but didn't. Nor did she do so during her deposition. Indeed, she admitted that she called Larsen and Choma "honey" (Ex. 2, Liebau Dep. II, p. 288); she admitted that Larsen instructed her to perform the conflict check discussed above and that she failed to do so (*id*. at 259–61); and she admitted that she accused Larsen of lying during an outburst at her desk (*id*. at 280.) Choma also documented Liebau's continued timekeeping and attendance infractions—none of which Liebau disputes. (*Id*. at 239–240.)

Second, Liebau had a chance to depose Choma, the decision maker, to explore the possibility that the firm's stated reasons weren't the actual motivation behind the decision to fire her. But Choma testified that they were. (Ex. 3, Choma Dep., p. 92.) Liebau also deposed several other firm employees, all of whom either were unfamiliar with the reason for Choma's decision (*see* Ex. 4, Larsen Dep., p. 26) or confirmed that the firm's stated reasons were the same ones Choma told them. (Ex. 6, Clinton Dep., pp. 45–46.)

There is also no other evidence suggesting that Choma had a hidden discriminatory motive. In fact, Liebau admitted during her deposition that she did

not suspect Choma of any age bias. (*See* Ex. 2, Liebau Dep. II, p. 292 ("A. It was Chelsea Larsen that had the age bias. Q. Yeah. Not Sue Choma; correct? A. Correct.").) If Liebau claims that Choma's suggestion to "reinvent" herself is evidence of an age-related animus, that kind of innocuous comment from two years before Liebau's termination cannot support an inference that, more likely than not, Liebau's age was a but-for cause of the termination decision. *See Kesler v. Barris, Sott, Denn & Driker, PLLC*, 482 F. Supp. 2d 886, 916 (E.D. Mich. 2007) ("Vague, ambiguous, and isolated remarks not related to the decision making process and the adverse action are insufficient direct evidence of animus . . . .").

Third and finally, Liebau has not shown that the firm's reasons were too weak to justify termination. To do that, Liebau "must show by a preponderance of the evidence that other employees, particularly employees not in the protected class, were not fired even though they were engaged in substantially identical conduct." *Blizzard v. Marion Tech. Coll.,* 698 F.3d 275, 286–87 (6th Cir. 2012). But there is no such evidence on this record. Liebau uncovered no evidence of other, younger employees who (1) reported to Choma, (2) were on probation, and (3) continued to engage in the unsatisfactory conduct that prompted their probationary status but were still not fired.

In sum, even assuming Liebau could show she was treated differently than younger, similarly situated individuals, she has not adduced evidence from which a

20

reasonable jury could conclude that the firm's stated reasons for terminating her employment were pretext for unlawful discrimination. The firm is therefore entitled to summary judgment on Liebau's age-discrimination claims.

## II.   Dykema Gossett is entitled to summary judgment on Liebau's retaliation claims.

Although not separated out as distinct causes of action, Liebau also alleges that her termination was retaliation for complaining about age discrimination. (Compl., ¶¶ 35, 45.) Retaliation claims under the ADEA and ELCRA follow the same analytical framework, and it's the same three-step approach applied above. *Spengler v. Worthington Cylinders*, 615 F.3d 481, 491 (6th Cir. 2010); *DeFlaviis v. Lord & Taylor, Inc*., 599 N.W.2d 661, 663 (Mich. Ct. App. 1997).

### A.   Liebau cannot make out a prima facie case of retaliation because there is no evidence from which a reasonable jury could infer causation.

First things first, the prima facie case. To establish a prima facie claim of retaliation, Liebau must show that: (1) she engaged in "protected activity"; (2) the firm knew this fact; (3) she suffered an adverse action; and (4) there is a causal connection between the protected activity and the adverse action. *Clay v. United Parcel Serv, Inc*, 501 F.3d 695, 713 (6th Cir. 2007).

A crucial first step in analyzing the prima facie case is identifying the protected activity. The only action that Liebau took that could qualify as protected activity was her June 18, 2019 complaint to Choma and Larsen that she suspected

Larsen of age-based animus. Liebau admits that this was the first time she complained of age-discrimination. (*See* Ex. 2, Liebau Dep. II, p. 291 ("I only put a point on it after May 9th."); Ex. 1, Liebau Dep. I, pp. 88–91.)

During her deposition, Liebau tried to stretch this point back in time, stating that she complained to Choma before being placed on probation about the wheelchair being near her desk. (Ex. 2, Liebau Dep. II, p. 291.) But, by her own description, what she said was not a complaint of age discrimination. She merely said, "I don't like it there, people think there's something wrong with me, please store it somewhere else[.]" (*Id.*) She also could not say when this conversation occurred, making it impossible to draw a causal connection to her termination.

Assuming that Liebau's June 18, 2019 complaint of age discrimination by Larsen qualifies as protected activity, Liebau cannot show a causal connection between it and the firm's decision to terminate her employment. Liebau, of course, will emphasize the timing of her termination, coming roughly two months after her complaint. But when it comes to causation, temporal proximity is rarely enough, standing alone. *See Chandler v. Specialty Tires of Am. (Tennessee), Inc.*, 283 F.3d 818, 826 (6th Cir. 2002) ("Proximity in time can raise a prima facie case of retaliatory discharge. But proximity alone may not survive summary judgment, nor does it necessarily imply causation." (citations omitted)). "[P]laintiff must show something more than merely a coincidence in time between protected activity and

adverse employment action." *Garg v. Macomb Cty. Cmty. Mental Health Servs.*, 696 N.W.2d 646, 660 (Mich. 2005).

And here, Liebau is missing that "something more." *Id*. In fact, the context of the timing dispels any inference that Liebau's termination was retaliation. When Liebau complained, the firm had already placed her on probation, warning her that she needed to improve her performance to avoid termination at the end of the probation period. And she was already falling behind. The setting for the June 18th complaint was a performance-improvement meeting meant to discuss Liebau's outburst toward Larsen days earlier. During that same meeting, Liebau engaged in even more unprofessional and disrespectful behavior, which led to yet another disciplinary meeting and a further warning that termination would result if she did not turn things around. (Ex. 17, July 1, 2019 Memo.) Her termination a month later was therefore a "natural progression of [the firm's] preexisting concerns"—a follow through on its earlier promise to terminate if she did not improve. *Beard v. AAA of Michigan*, 593 F. App'x 447, 451 (6th Cir. 2014).

Under these circumstances, courts routinely refuse to infer retaliation where "oral and written warnings" of misconduct occurred "both before and after . . . [the plaintiff] filed the charge of discrimination." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1324 (10th Cir. 1997); *see Cooper v. City of N. Olmsted*, 795 F.2d 1265, 1272 (6th Cir. 1986) (employee cited for work violations before and after alleged protected

activity was required to directly link issuance of post-complaint citations to the protected activity). As the Sixth Circuit aptly put it, "An employee cannot allege discrimination like a protective amulet when faced with the possibility that his preexisting disciplinary problems could lead to his termination." *Beard*, 593 F. App'x at 451. That is precisely what Liebau seeks to achieve here.

### B.   In any event, Liebau's retaliation claims fail because she has not shown that Dykema Gossett's stated justification was pretext for unlawful retaliation.

Even if Liebau could satisfy a prima facie case, her retaliation claims still fail because she cannot show that the firm's stated reasons were pretext.

To prove pretext in the retaliation context, a plaintiff must show that "the reason given by the employer is mistaken, foolish, trivial, or baseless." *Clay*, 501 F.3d at 714 (quotations omitted). If the employer has an "honest belief" in the non-retaliatory grounds for the termination, the "plaintiff must produce sufficient evidence from which the jury could reasonably reject [the defendants'] explanation and infer that the defendants . . . did not honestly believe in the proffered nondiscriminatory reason." *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530–31 (6th Cir. 2012).

Liebau cannot show that Choma did not honestly believe that her stated reasons for terminating Liebau *and* that her real motivation was unlawful retaliation. *Id*. Again, Liebau admitted that she does not suspect Choma of any age bias. (*See*

24

Ex. 2, Liebau Dep. II, p. 292 ("A. It was Chelsea Larsen that had the age bias. Q. Yeah. Not Sue Choma; correct? A. Correct.").) Nor can Liebau point to any contemporaneous statements by Choma suggesting that she harbored age-based animus toward Liebau. For these reasons, and those discussed above in the context of Liebau's discrimination claims, Liebau cannot establish that the firm's stated reasons for termination was pretext for unlawful retaliation.

## CONCLUSION AND RELIEF REQUESTED

Liebau having failed to adduce evidence from which a reasonable jury could conclude that she was (1) discriminated against on the basis of age or (2) retaliated against for complaining about age discrimination, Dykema Gossett is entitled to judgment as a matter of law on each of her claims.

Respectfully submitted,

KIENBAUM HARDY VIVIANO
PELTON & FORREST, P.L.C.

By: */s/ Elizabeth Hardy*
    Elizabeth Hardy (P37426)
    David Porter (P76785)
Attorneys for Defendant
280 N. Old Woodward Ave., Suite 400
Birmingham, MI 48009
(248) 645-0000
ehardy@khvpf.com
Dated: August 1, 2022          dporter@khvpf.com

25

## CERTIFICATE OF SERVICE

I hereby certify that on August 1, 2022, I electronically filed the foregoing document with the Clerk of the Court using the ECF System, which will provide electronic copies to all ECF participants.

/s/ *Elizabeth Hardy*
Elizabeth Hardy (P37426)
Kienbaum Hardy Viviano
  Pelton & Forrest, P.L.C.
280 N. Old Woodward Avenue
Suite 400
Birmingham, MI  48009
(248) 645-0000
ehardy@khvpf.com

1