UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

KATHLEEN L. LIEBAU,

               Plaintiff,             Case No. 21-cv-11823
                                           Hon. Shalina D. Kumar

vs.                                  Magistrate Judge David R. Grand

DYKEMA GOSSETT, PLLC, a
Michigan professional limited
liability company,

               Defendant.

_____/

| | |
|---|---|
| Raymond J. Sterling (P34456) | Elizabeth Hardy (P37426) |
| Brian J. Farrar (P79404) | David Porter (P76785) |
| Attorneys for Plaintiff | Attorneys for Defendant |
| STERLING ATTORNEYS AT LAW, P.C. | KIENBAUM HARDY VIVIANO PELTON |
| 33 Bloomfield Hills Pkwy., Ste. 250 |  & FORREST, P.L.C. |
| Bloomfield Hills, MI 48304 | 280 N. Old Woodward Ave., Ste. 400 |
| (248) 644-1500 | Birmingham, MI 48009 |
| rsterling@sterlingattorneys.com | (248) 645-0000 |
| bfarrar@sterlingattorneys.com | ehardy@khvpf.com |
| | dporter@khvpf.com |

_____/

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

COUNTER-STATEMENT OF ISSUES PRESENTED..............................................................ii

CONTROLLING OR MOST APPROPRIATE AUTHORITY ....................................................iii

INDEX OF AUTHORITIES.......................................................................................iv, v

INTRODUCTION ................................................................................................. 1

COUNTER-STATEMENT OF PERTINENT FACTS.......................................................... 1

STANDARD OF REVIEW........................................................................................ 8

LEGAL ARGUMENT............................................................................................. 8

I.      Liebau easily establishes a prima facie case of discrimination and retaliation under the ADEA and ELCRA ......................................................... 9

        A.    The circumstances surrounding Liebau's treatment and ultimate termination support an inference of discrimination ............................ 11

        B.    Larsen treated Liebau worse than similarly situated employees on her team................................................................................. 12

II.     Liebau has ample evidence of pretext ............................................................ 15

        A. A jury could easily reject Dykema's purported reasons for terminating Liebau...................................................................... 17

        B. Dykema's lack of candor regarding Liebau's purported misconduct raises serious doubt as to whether a jury will find any of its claims to be credible........................................................................... 20

        C. Dykema's argument that Larsen was not a decision-maker for Liebau's termination is without merit ......................................... 21

III.    Dykema is not entitled to summary judgment on Liebau's retaliation claim.................................................................................................. 23

CONCLUSION................................................................................................. 25

## COUNTER-STATEMENT OF ISSUES PRESENTED

I.    Does plaintiff raise a genuine dispute of material fact for a jury to determine whether defendant terminated her in violation of the Age Discrimination in Employment Act ("ADEA") and the Elliott -Larsen Civil Rights Act ("ELCRA")?[1]

      Plaintiff answers:                    Yes
      Defendant answers:               No
      The Court should answer:      Yes

II.   Does plaintiff raise a genuine dispute of material fact for a jury to determine whether defendant retaliated against her in violation of the ADEA and ELCRA?

      Plaintiff answers:                    Yes
      Defendant answers:               No
      The Court should answer:      Yes

---

[1] In defendant's statement of issues presented, Dykema asks this Court whether it is entitled to summary judgment on plaintiff's race discrimination claims. This appears to be a typo as plaintiff is not alleging that she was discriminated or retaliated against due to her race.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Griffin v Finkbeiner*, 689 F3d 584, 593 (6th Cir 2012) ("to survive summary judgment a plaintiff need only produce enough evidence to support a prima facie case and to rebut, but not to disprove, the defendant's proffered rationale").

*Lindsay v Yates*, 578 F3d 407, 417 (6th Cir 2009) ("So long as additional evidence exists-beyond showing the first three elements of the *McDonnell Douglas* test-that indicates discriminatory intent in light of common experience, the required 'inference of discrimination' can be made in satisfaction of the prima facie case. This holds true even if the plaintiff is not necessarily able to identify similarly-situated individuals outside of the relevant protected group who were treated more favorably").

*Hazle v Ford Motor Co,* 464 Mich 456, 466 (2001) (under Michigan's Elliott-Larsen Act, a plaintiff is not required to establish that age is the sole reason for her treatment).

INDEX OF AUTHORITIES

<u>Case Law</u>

*Anderson v Liberty Lobby, Inc,* 477 US 242 (1986)..................................................................... 4

*Barnett v Whirlpool Corp*, 556 F3d 502 (6th Cir 2009) ............................................................. 17

*Blair v Henry Filters, Inc*, 505 F3d 517 (6th Cir 2007) .............................................................. 11

*Bryson v Regis Corp,* 498 F3d 561 (6th Cir 2007) ..................................................................... 24

*Chen v Dow Chem. Co,* 580 F3d 394 (6th Cir 2009)................................................................. 16

*Clay v United Parcel Serv, Inc,* 501 F3d 695 (6th Cir 2007)..................................................... 10

*Cline v Catholic Diocese of Toledo*, 206 F3d 651 (6th Cir 2000) ............................................. 12

*Debrow v Century 21 Great Lakes, Inc,* 463 Mich 534 (2001) ................................................... 9

*Dews v AB Dick Co,* 231 F3d 1016 (6th Cir 2000) .................................................................... 16

*EEOC v Ford Motor Co,* 782 F3d 753 (6th Cir 2015) ................................................................ 21

*EEOC v New Breed Logistics*, 783 F3d 1057 (6th Cir 2015)..................................................... 22

*EEOC v Yenkin-Majestic Paint Corp*, 112 F3d 831 (6th Cir 1997) ........................................... 16

*Ehrbar v Forest Hills Hosp,* 131 F Supp 3d 5 (EDNY 2015)..................................................... 15

*Ercegovich v Goodyear Tire & Rubber Co,* 154 F3d 344 (6th Cir 1998) ................................. 17

*Fuentes v Perski*, 32 F3d 759 (3d Cir 1994)............................................................................. 20

*Gordon v US Dept of Navy*, 798 F2d 469 (6th Cir 1986).......................................................... 17

*Griffin v Finkbeiner*, 689 F3d 584 (6th Cir 2012) ................................................................. 9, 12

*Grosjean v First Energy Corp,* 349 F3d 332 (6th Cir 2003)...................................................... 13

*Gross v FBL Fin Servs, Inc,* 557 US 167 (2009) .................................................................. 8, 11

*Hagedorn v Veritas Software Corp,* 129 F Appx 1000 (6th Cir 2005) ...................................... 13

*Harris v Forklift Sys,* 510 US 17 (1993) ...................................................................................... 8

*Hartley v Wisc Bell,* 124 F3d 887 (7th Cir 1997) ...................................................................... 13

*Hazle v Ford Motor Co,* 464 Mich 456 (2001) ............................................................................ 8

*Henry v Shawnee Specialties, Inc,* 2016 WL 1253041, at *4 (WD Mich, Mar 31, 2016)...... 11

*Jones v Potter,* 488 F3d 397 (6th Cir 2007).............................................................................. 24

*Jones v Western Geophysical Co,* 669 F2d 280 (5th Cir 1982) ............................................... 15

*Lindsay v Yates*, 578 F3d 407 (6th Cir 2009) ........................................................................... 10

*Marshall v The Rawlings Company,* 854 F3d 368 (6th Cir 2017).................................... 21, 22

*Mickey v Zeidler Tool & Die Co*, 516 F3d 516 (6th Cir 2008) ................................................... 24

*Mitchell v Toledo Hosp,* 964 F2d 577 (6th Cir 1992) ............................................................... 14

*Moore v Kuka Welding*, 171 F3d 1073 (6th Cir 1999) .............................................................. 25

*Norfolk & W Ry Co v McKenzie*, 116 F2d 632 (6th Cir 1941).................................................... 20

*O'Connor v Consol Coin Caterers Corp*, 517 US 308 (1996)................................................... 13

*Provenzano v LCI Holdings, Inc*, 663 F3d 806 (6th Cir 2011) .................................................... 9

*Pullman-Standard v Swint*, 456 US 273 (1982).......................................................................... 8

*Rachells v Cingular Wireless Employee Servs, LLC,* 732 F3d 652 (6th Cir 2013)................ 10

*Reeves v Sanderson Plumbing Products, Inc,* 530 US 133 (2000)......................................... 15

*Satterfield v State of Tenn*, 295 F3d 611 (6th Cir 2002) ........................................................ 8

*Scheick v Tecumseh Pub Sch*, 2013 WL 1148431, at *9 (ED Mich Mar 19, 2013)............. 15

*Snieciniski v Blue Cross Blue Shield of MI*, 469 Mich 124 (2003) ........................................ 9

*Staub v Proctor Hosp*, 562 US 411 (2011) ........................................................................... 23

*Tennial v United Parcel Serv, Inc*, 840 F3d 292 (6th Cir 2016) .......................................... 14

*Texas Dept of Community Affairs v Burdine,* 450 US 248 (1983) ...................................... 15

*Tuttle v Metro Gov't of Nashville,* 474 F3d 307 (6th Cir 2007 .............................................. 9

*United Air Lines, Inc v Evans*, 431 US 553 (1977) ............................................................... 17

*Willard v Huntington Ford*, 952 F3d 795 (6th Cir 2020) ........................................................ 9

*Winter v Fitness USA Health Spas Corp-Flint/Lansing*, 1999 WL 33430030, p *2
   (Mich App) (Nov 12, 1999)............................................................................................... 12

## Statutes, Court Rules, Misc.

M Civ JI 105.02................................................................................................................... 9

## INTRODUCTION

Packages of adult diapers and fake prescription pill bottles covering a workstation. An office chair replaced by a wheelchair. These are not things most people associate with birthday celebrations. But for some employees at Dykema, it is just another day at the office.

When plaintiff Kathleen L. Liebau ("Liebau") turned 50, that is how her co-worker Chelsea Larsen ("Larsen") chose to acknowledge her birthday. For over three years, despite Liebau's repeated requests to move it, that wheelchair remained by Liebau's workstation, as a constant reminder that Larsen and other colleagues viewed Liebau as old and feeble. When Larsen became the managing attorney on a project to which Liebau was assigned, Larsen's discriminatory treatment continued. As her manager, Larsen repeatedly asked Liebau when she was going to retire, treated Liebau worse than younger co-workers, and subjected her to unwarranted performance criticisms.

In August 2019, Dykema terminated Liebau after nearly *35 years* of outstanding service. Dykema claims it fired Liebau for a slew of performance-related issues. Liebau's positive performance evaluations tell a different story.

## COUNTERSTATEMENT OF PERTINENT FACTS

### *Liebau was a loyal and dedicated employee for nearly 35 years*

Plaintiff Kathleen Liebau was born in 1965 and is 56 years old (**EX 1**, Liebau pp 7:25-8:1). Dykema hired Liebau in February 1985 (*id*, p 8:2-4). Over the years Liebau wore different hats at the firm: she was hired as a Legal Secretary, later became an Administrative Assistant, and then a Project Administrator (*id*, pp 56:5-14; 59:22-60:7; **EX 2**, email changing job title).

Dykema acknowledges in its summary judgment brief that Liebau even performed some paralegal duties but claims she was not a paralegal because she never formally applied for that position. However, one of Dykema's internal documents shows the firm even classified her as a paralegal (**EX 3**, Roster for Consumer Matters Team Members).

*At all times, Liebau received positive*
*performance reviews from the attorneys she worked with*

Since around 2005, Liebau worked on various projects for attorney Clay Guise ("Guise") (**EX 4**, Guise pp 31:13 – 32:5). In her 2015 performance review, Guise described Liebau as "an invaluable part of our team" and her overall work product as "excellent" (**EX 5**, Guise 2015 performance review). In 2016, Guise once again described Liebau's overall work product as "excellent" and called her a "critical" member of the team (**EX 6**, Guise 2016 performance review). Guise also clarified that Liebau was not an Administrative Assistant since she was performing discovery work and was communicating with outside counsel – work typically performed by paralegals (*id*). In 2017, Guise called Liebau "great" and reiterated that she was an "invaluable member" of the team (**EX 7**, Guise 2017 email to Choma).

Around September 2017, Guise assigned Liebau to work on a new team he was heading that was responsible for handling auto warranty cases (**EX 4**, Guise pp 14:18-21:14; **EX 1**, Liebau pp 142:25-143:2). Dykema claims in its brief that Liebau struggled with her performance on this team but her reviews from Guise and Chelsea Larsen remained strong during this period. In 2018, the last performance review Guise prepared for Liebau, Guise described Liebau's performance on the team as "generally good" in this relatively high

volume, fast turnaround project (**EX 8**, Guise 2018 performance review).

In 2018, Larsen provided her first performance review of Liebau in which she also described Liebau's work as "generally good" (**EX 9**, Larsen 2018 performance review). Larsen went on to identify some of the challenges facing the team at the time but noted that she was "impressed by the improvements [Liebau] has made to adjust to this new environment" (*id*).

Larsen's 2019 review of Liebau, the last performance review she did shortly before Liebau's termination, contained less detail than previous reviews but stated that Liebau's overall performance met Larsen's needs (**EX 10**, Larsen 2019 performance review).

### *Dykema throws Liebau a 50th birthday "party" filled with ageist tropes and stereotypes*

In October 2015, before Liebau was assigned to work on a team managed by Larsen, Larsen and other co-workers organized a 50th birthday "party" for Liebau and decorated Liebau's desk with adult diapers, fake prescription pill bottles, and a wheelchair (**EX 1**, Liebau pp 71:16-72:19, 75:8-16; **EX 11**, Larsen pp 88:2-90:6). Larsen borrowed the wheelchair from her church, specifically for Liebau's birthday (**EX 11**, Larsen p 91:1-13). At that time, Larsen and Liebau had never worked directly together (**EX 12**, Liebau Decl). Either during the "party," or shortly thereafter, Larsen asked Liebau if she was going to retire now that she was 50 and expressed surprise when Liebau told her she had no plans to retire (**EX 1**, Liebau pp 82:16-19, 84:1-10). On the day of the "party," Liebau packed up the offensive decorations, placed them on top of the wheelchair, and wheeled them into Larsen's office (*id*, p 86:5-10). When Liebau returned the next work day, the wheelchair was back at her desk (*id*).

*Larsen's refusal to move the wheelchair served
to further demean and embarrass Liebau*

Liebau repeatedly requested Larsen move the wheelchair but Larsen refused to move it (**EX 1**, pp 86:5-10, 93:2-24). It remained for so long next to Liebau's workstation that other employees – including the office manager, assumed the wheelchair was Liebau's (*id*, pp 87:21-88:5, 291:15-292:1, 312:25-313:4). In fact, other employees thought something was wrong with Liebau and asked her why she needed a wheelchair (*id*, pp 88:24-89:14, 309:7-16). Co-workers even told Liebau that they too would not have wanted the wheelchair next to their workstations because "it makes you look old or something's wrong with you" (*id*, pp 309:23-310:4). Several co-workers even told Liebau that they were embarrassed for Liebau to have the wheelchair by her workstation and that they felt Larsen's behavior was inappropriate (**EX 12**, Liebau Decl).

*As her manager, Larsen is openly hostile to Liebau from Day One*

After Liebau requested Larsen move the wheelchair from her desk, Larsen's attitude towards Liebau changed and Larsen stopped acting like Liebau's friend (**EX 1**, Liebau pp 96:12-103:4). In fall 2017, when Larsen learned that Liebau had been assigned to a team Larsen was going to be managing, Larsen replied "Really?" and her facial expression and body language suggested she was upset Liebau would be working with her (*id*, pp 96:16-97:22; **EX 12**, Liebau Decl).

As her manager, Larsen repeatedly asked Liebau when she was going to retire (**EX 1**, Liebau pp 82:24-83:25, 127:22-132:18). The tone in Larsen's voice and her body language

suggested she was upset that Liebau was not retiring (*id*; **EX 12**, Liebau Decl). Larsen never asked Robin Kowalski, the younger paralegal on their team, if she was going to retire (**EX 1**, Liebau p 127:1-3). After Liebau refused to retire, Larsen excluded Liebau from important team meetings and kept Liebau out of the loop on issues pertinent to Liebau's job (**EX 1**, Liebau pp 96:16-103:16, 119:24-125:13). For instance, at the start of the project, the partner in charge, Clay Guise, directed that Larsen obtain the required credentials so Liebau could access client systems necessary to perform her work (*id*, pp 98:5-101:16). However, for months Larsen refused to provide Liebau with this access despite repeated requests from Liebau. *Id*.

Larsen also treated Liebau worse than the younger paralegal on the team. Larsen reported to Guise that Liebau was "slow;" however, Liebau completed more work in a shorter amount of time than any of the paralegals on the team (**EX 1**, Liebau pp 160:12-23, 186:9-192:1).

### When Liebau refuses to retire and threatens to take legal action, Larsen and Choma paper Liebau's file with bogus performance write-ups

Dykema argues that Office Manager Sue Choma was Liebau's direct supervisor. Choma was Liebau's supervisor on paper but had very little knowledge of Liebau's day-to-day work (**EX 1**, Liebau pp 49:24-50:20, 220:23-221:13; **EX 13**, Choma p 48:5-12). Dykema even admits that Liebau was managed day-to-day by Larsen (**EX 14**, Def's Interrogatory Answers). However, just like Guise and Larsen, Choma also prepared an annual performance evaluation for Liebau. In April 2019, just four months before Liebau's termination, Choma found that Liebau met or exceeded expectations in all performance areas, and that Liebau's

attendance and punctuality were "satisfactory" (**EX 15**, Choma 2019 performance review).

On April 11, 2019, Choma met with Liebau to discuss Liebau's performance evaluation and described Liebau's demeanor throughout the meeting as "okay" (**EX 13**, Choma p 46:3-23; **EX 16**, Choma meeting notes). Choma also noted that Liebau seemed not pleased with the review. *Id*.

On April 30, 2019, Larsen's discrimination of Liebau can to a head: during a discussion, Liebau confronted Larsen about her age bias and openly pondered whether she needed to get an attorney (**EX 12**, Liebau Decl). This is corroborated by Choma's meeting notes in which she recounts being told by Larsen the next day that Liebau might be getting an attorney (**EX 16**, Choma meeting notes). When Larsen asked Liebau why she believed she was being discriminated against, Liebau gave her examples of how Larsen treated Kowalski better than she, falsely told co-workers Liebau was "slow," and teased Liebau about having to wear reading glasses (**EX 12**, Liebau Decl).

Also on April 30, Larsen emailed Liebau and other team members a request to begin case evaluations; Liebau responded with questions about how to prioritize the work but Larsen never responded to her email (**EX 11**, Larsen pp 36:1-39:22). Larsen then forwarded an incomplete email exchange to Choma that misrepresented the reasons Liebau had not completed the assignment (*id*; **EX 17**, Larsen email to Choma May 6).

Several days later, on May 9, 2019, Choma placed Liebau on a 90-day probation, based on false information provided to Choma by Larsen (**EX 18** May 9 memo). Liebau explained to Choma that Larsen had not given her a true story and even printed email

exchanges between Liebau and Larsen to prove Liebau was telling the truth (**EX 12**, Liebau Decl). Choma refused to consider Liebau's evidence (*id*). Liebau then alerted Guise that Larsen was subjecting her to a hostile work environment and Guise passed that information along to Choma (**EX 19**, Guise May 16 email). Larsen also reported Liebau's age complaints to Guise (**EX 11**, Larsen pp 63:5-64:9).

On June 18, 2019, Liebau met with Larsen and Choma and specifically told them that if they did not permanently remove the wheelchair, Liebau would file an age discrimination suit (**EX 1**, Liebau p 88:8-13). On July 1, 2019, Liebau asked Choma to conduct an independent investigation into age discrimination Liebau was experiencing at the hands of Larsen but Choma refused (**EX 12**, Liebau Decl; **EX 16**, Choma meeting notes).

### *Dykema terminates Liebau*

On August 23, 2019, just shy of Liebau's 35-year anniversary with the firm, Dykema fired Liebau purportedly for failing to "maintain professional and respectful conduct," "comply with firm policies and procedures," and "demonstrate satisfactory performance improvement" (**EX 20**, Termination letter). However, the partner in charge of the project, Clay Guise, struggled to identify any behaviors he observed that would have justified Liebau's termination (**EX 4**, Guise, pp 67:7-68:19). Likewise, Larsen, who interacted most regularly with Liebau, was not aware of any instances over the last two years of Liebau's employment in which Liebau acted unprofessionally (**EX 11**, Larsen p 32:19-25).

## STANDARD OF REVIEW

In assessing whether summary judgment is appropriate, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in his favor." *Anderson v Liberty Lobby, Inc,* 477 US 242, 251-52 (1986). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Id* at 251-52. Indeed, "[c]redibility determinations, the weighing of the evidence and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . ." *Id* at 255. If a reasonable jury could return a verdict for the plaintiff, then a genuine dispute of material fact exists and summary judgment may not be granted. *Satterfield v State of Tenn*, 295 F3d 611, 615 (6th Cir 2002).

When evaluating discrimination claims, the court must consider the totality of the evidence. *Harris v Forklift Sys*, 510 US 17, 23 (1993). Discriminatory intent is a "pure question of fact." *Pullman-Standard v Swint*, 456 US 273, 287-88 (1982).

## LEGAL ARGUMENT

Liebau brings claims of age discrimination under both the federal Age Discrimination in Employment Act (ADEA) and Michigan's Elliott-Larsen Civil Rights Act (ELCRA).

Under the ADEA, plaintiff has the burden of persuading the jury that she would not have been terminated but for her age. *Gross v FBL Fin Servs, Inc,* 557 US 167 (2009). By contrast, her ELCRA claim requires a lesser showing that plaintiff's age was *a* motivating factor behind her termination. *Hazle v Ford Motor Co,* 464 Mich 456, 466 (2001) ("[age] does not have to be the only reason, or even the main reason, but it does have to be one of the

reasons which made a difference…") citing M Civ JI 105.02; *see also Provenzano v LCI Holdings, Inc*, 663 F3d 806, 818 (6th Cir 2011) ("In contrast to the ADEA's 'but-for' causation burden, under the ELCRA, a plaintiff must ultimately prove that the defendant's discriminatory animus was a 'substantial' or 'motivating' factor in the decision") (citing *Snieciniski v Blue Cross Blue Shield of MI*, 469 Mich 124 (2003)).

"To survive summary judgment a plaintiff need only produce enough evidence to support a prima facie case and to rebut, but not to disprove, the defendant's proffered rationale" *Griffin v Finkbeiner*, 689 F3d 584, 593 (6th Cir 2012). Plaintiff's evidence more than satisfies the test.

I.  **Liebau easily establishes a prima facie case of discrimination under the ADEA and ELCRA.**

Dykema concedes that Liebau establishes the first three elements of a prima facie case of age discrimination: (1) she was over 40 years old; (2) she was terminated from her job; and (3) she was qualified to perform her job, as evidenced by her positive performance reviews over nearly 35 years. *Tuttle v Metro Gov't of Nashville*, 474 F3d 307, 317 (6th Cir 2007). The fourth and final element of the prima facie case requires only a showing that there were "circumstances which support an inference of discrimination," *Willard v Huntington Ford*, 952 F3d 795, 808 (6th Cir 2020).[2]

---

[2] Similarly, under state law, a plaintiff establishes a prima facie case with evidence that he: 1) belongs to a protected class, 2) suffered an adverse employment action, 3) was qualified for the position, and 4) *the adverse action occurred under circumstances giving rise to an inference of unlawful discrimination*. *Debrow v Century 21 Great Lakes, Inc*, 463 Mich 534, n 8 (2001) (emphasis added).

Dykema argues Liebau cannot satisfy this final element because she was not replaced by someone younger or treated less favorably than similarly-situated employees. However, Dykema wrongly asserts that those are the only ways a plaintiff can satisfy the fourth element. See *Lindsay v Yates*, 578 F3d 407, 417 (6th Cir 2009) ("while a discriminatory inference is *usually*, and perhaps most readily, generated through evidence of unfavorable treatment of the minority plaintiff vis-à-vis similarly-situated individuals, *McDonnell Douglas* and its progeny do not require this *always* be the case....") (emphasis in original). *Lindsay* goes on to hold that:

> So long as additional evidence exists-beyond showing the first three elements of the *McDonnell Douglas* test-that indicates discriminatory intent in light of common experience, the required 'inference of discrimination' can be made in satisfaction of the prima facie case. This holds true even if the plaintiff is not necessarily able to identify similarly-situated individuals outside of the relevant protected group who were treated more favorably.

*Id* at 418; see also *Rachells v Cingular Wireless Employee Servs, LLC,* 732 F3d 652, 661 (6th Cir 2013) ("There are many 'context-dependent ways by which plaintiffs may establish a prima facie case' of discrimination") quoting *Clay v United Parcel Serv, Inc,* 501 F3d 695, 704 (6th Cir 2007). In fact, this Circuit explicitly rejects a "rigid, mechanized, or ritualistic" approach to establishing a prima facie case and allows courts to consider any evidence that suggests a discriminatory intent. *Lindsay*, 578 F3d at 417; *Clay,* 501 F3d at 703 (cautions against an overly mechanistic application of the prima facie elements because "[t]he key question is always whether, under the particular facts and context of the case at hand, the plaintiff has presented sufficient evidence that he or she suffered an adverse employment

action under circumstances which give rise to an inference of unlawful discrimination").

### A. The circumstances surrounding Liebau's treatment and ultimate termination support an inference of discrimination.

Here, Liebau has more than enough evidence of circumstances that support an inference of discrimination. The attorney supervisor she reported to, and who was responsible for evaluating her work, called Liebau out when Liebau turned 50 in a manner that was unambiguously ageist and discriminatory. As soon as Liebau turned 50, Larsen's attitude of her changed. Larsen expressed disappointment in having to work with Liebau even though they had never had any problems and Larsen had no reason not to want to work with Liebau. Larsen refused Liebau's repeated requests to move the wheelchair, as its presence next to Liebau's workstation is clearly associated with ageist stereotypes. And finally, when Liebau confronted Larsen about her age discrimination and mentioned getting an attorney, Larsen's treatment of her got worse. Nine days later Dykema placed Liebau on probation based on false allegations made by Larsen, and three months later Dykema fired Liebau – just shy of her 35th year work anniversary.

Indeed, there are many instances in which courts have found discriminatory remarks or actions can support an "inference of discrimination." See *Blair v Henry Filters, Inc*, 505 F3d 517, 530 (6th Cir 2007), overruled on other grounds by *Gross*, 557 US at 178 n 4 (2009) (inferring discrimination based on discriminatory comments made by a supervisor towards the plaintiff); *Henry v Shawnee Specialties, Inc*, 2016 WL 1253041, at *4 (WD Mich Mar 31, 2016) (discriminatory remarks made to plaintiff in the context of criticizing plaintiff's job performance,

"constitute sufficient evidence to permit an inference of improper discrimination in Plaintiff's case").

The prima facie case is not meant to be an onerous burden, and the amount of evidence a plaintiff must produce on the elements is not extensive. *Cline v Catholic Diocese of Toledo*, 206 F3d 651, 660 (6th Cir 2000). Additionally, "to survive summary judgment a plaintiff need only produce enough evidence to support a prima facie case and to rebut, but not to disprove, the defendant's proffered rationale." *Griffin*, 689 F3d at 593 (internal quotation omitted). Here, Liebau has presented enough evidence that supports an inference of discrimination to meet the relatively low threshold for establishing a prima facie case.

### B.      Larsen treated Liebau worse than similarly situated employees on her team.

Even assuming more evidence is needed to satisfy the fourth prong of a prima facie case, the record is replete with examples in which Larsen treated Liebau's co-worker, Robin Kowalski, better than she treated Liebau. Dykema argues Kowalski is not a proper comparator because she was not "substantially younger" than Liebau, and because she had a different job title. Each of those arguments fail. Regarding Dykema's first argument, there is no requirement under plaintiff's ELCRA claim that a comparator be "substantially younger" for purposes of establishing a prima facie case. See generally *Winter v Fitness USA Health Spas Corp-Flint/Lansing*, 1999 WL 33430030, p *2 (Mich App) (Nov 12, 1999) (unlike the ADEA, Michigan law does not require the other employee be ***substantially younger*** as long as he/she is younger than plaintiff). Thus, the age differential between Liebau and Kowalski is

irrelevant for ELCRA and Dykema already admits Kowalski is younger.

Moreover, while this Circuit generally requires any replacement be at least six years younger (i.e., "substantially younger") to prove a prima facie case under the ADEA using the replacement evidence, it is less clear whether such an age differential is still required when showing unequal treatment vis-à-vis a comparator. The only case Dykema cites for that proposition is the unpublished Court of Appeals decision, *Hagedorn v Veritas Software Corp*, which held that the plaintiff could create a material issue of fact regarding *either* his replacement by a substantially younger individual *or* his less favorable treatment compared to a similarly situated and substantially younger individual. 129 F Appx 1000, 1002 (6th Cir 2005). The opinion cites no authority for the proposition that the comparator (as opposed to the replacement) must be substantially younger as opposed to just younger. Indeed, *O'Connor v Consol Coin Caterers Corp*, which *Hagedorn* cites earlier in the opinion, refers only to replacements being substantially younger and says nothing about comparators for purposes of showing unequal treatment. 517 US 308, 312 (1996).

Nevertheless, even if this Court finds plaintiff's comparator must be "substantially younger," there is yet another way for Liebau to prevail. "In cases where the disparity is less [than substantial], the plaintiff still may present a triable claim if she directs the court to evidence that her employer considered her age to be significant" *Grosjean v First Energy Corp*, 349 F3d 332, 339 (6th Cir 2003) citing *Hartley v Wisc Bell,* 124 F3d 887, 893 (7th Cir 1997). Here, Larsen admitted that she does not know how old Kowalski is (**EX #**, Larsen p 61:2-18). However, Larsen knew Liebau was over the age of the 50. Since Larsen planned

and participated in Liebau's 50th birthday party which included ageist stereotypes, a reasonable jury could conclude that Larsen considered Liebau's age of 50 to be significant. In other words, the fact that Kowalski may have also been inside the protected class is irrelevant – what matters is how Larsen's viewed Liebau's age in comparison to Kowalski's.

Dykema's second argument that Kowalski and Liebau are not proper comparators also fails. Liebau and Kowalski worked on the same team and the team roster confirms that not only did Liebau and Kowalski have the same job title – they even performed identical tasks (i.e., "case assessment and tracking") (**EX 3,** Roster). Guise even admitted that he would give Liebau and Kowalski "the same job description" (**EX 4,** Guise pp 27:23-28:9). While they may have had different supervisors on paper, they were both managed day-to-day by Larsen.

At the very least, a question of fact exists as to whether Liebau and Kowalski were similarly situated for purposes of a prima facie case. *Tennial v United Parcel Serv, Inc*, 840 F3d 292, 304 (6th Cir 2016) ("employee need not be identical in every way in order to be a proper comparator"); *Mitchell v Toledo Hosp,* 964 F2d 577, 583 (6th Cir 1992) (employees are comparable when they "have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct …").

Finally, Dykema highlights throughout its brief the fact that it purportedly hired someone three years older to replace Liebau. Dykema only hired this older replacement *after* Liebau had complained of age discrimination and put the firm on notice she was contacting a lawyer. Thus, Dykema's decision to purportedly hire someone older than Liebau should be taken with a grain of salt. A jury could reasonably infer that Dykema only hired this older

employee to cover up its discriminatory treatment of Liebau and to make it harder for Liebau to pursue a claim against Dykema. See *Ehrbar v Forest Hills Hosp*, 131 F Supp 3d 5, 27 (EDNY 2015) ("where a replacement within the protected class follows a complaint of discrimination, such timing can support rather than undermine an inference of discrimination"); *Jones v Western Geophysical Co*, 669 F2d 280, 284-85 (5th Cir 1982) (employer's hiring of another person within the protected class may be calculated to disguise its act of discrimination toward the plaintiff); *Scheick v Tecumseh Pub Sch*, 2013 WL 1148431, at *9 (ED Mich Mar 19, 2013) ("being replaced by an older person is not fatal to Plaintiff's prima facie case if he can show that age discrimination was the true motivation behind the replacement and [the employer] was simply trying to insulate itself from liability") reversed on other grounds 766 F3d 523 (6th Cir 2014).

## II.    Liebau has ample evidence of pretext.

Once a plaintiff establishes a prima facie case, a presumption of discrimination arises and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the its action. *Reeves v Sanderson Plumbing Products, Inc*, 530 US 133, 142 (2000). If the employer does so, the burden shifts back to the plaintiff to present evidence the employer's articulated reason is pretextual. *Texas Dept of Community Affairs v Burdine,* 450 US 248, 252-53 (1983); *Reeves,* 530 US at 135 (a prima facie case, combined with sufficient evidence that the employer's asserted justification is false, permits a fact finder to conclude that the employer unlawfully discriminated against the employee).

"The law allows a factfinder to infer intentional discrimination from proof of the prima facie case coupled with a disbelief of the proffered reason for the employer's action." *EEOC v Yenkin-Majestic Paint Corp*, 112 F3d 831,835 (6th Cir 1997). A plaintiff can refute her employer's reason for termination "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews v AB Dick Co*, 231 F3d 1016, 1021 (6th Cir 2000). Ultimately, pretext "is a commonsense inquiry: did the employer fire the employee for the stated reason or not?" *Chen v Dow Chem. Co*, 580 F3d 394, 400, n 4 (6th Cir 2009). If plaintiff "produced evidence from which a jury could doubt the employer's explanation," there is evidence "sufficient to support an inference of discrimination at trial." *Id* (citing *Hicks*, 409 US at 515).

As an initial matter, Liebau was not a new employee – she had worked at Dykema nearly 35 years. Yet, the purported behavioral problems Dykema uses to justify Liebau's termination only started to become an issue *after* Liebau was put on Larsen's team and began complaining of age discrimination. Larsen's ageist attitude as evidenced by the birthday party and Larsen's repeated inquiries concerning Liebau's retirement, coupled with the suspicious timing of Liebau's write-ups, should be all the pretext evidence Liebau needs to reach a jury.

In its brief, Dykema suggests that the offensive birthday decorations were a "light-hearted gesture" and not indicative of Larsen's age bias. Dykema can make that argument to a jury. But whether Larsen intended the party to be in good humor, or whether she intended it to embarrass and demean Liebau's age, is not appropriately decided at summary judgment.

*Gordon v US Dept of Navy*, 798 F2d 469 (6th Cir 1986) ("summary judgment may be particularly inappropriate where motive and intent are at issue").

Dykema may argue that even if Larsen exhibited ageist behavior at Liebau's 50th birthday party, that behavior occurred too long ago to be actionable. Discriminatory animus is not like a carton of milk; it does not expire after a few weeks. Larsen is free to explain to a jury how her views of people in their 50's has changed, and that she did not harbor ageist animus at the time she managed Liebau. But, once again, questions of intent and credibility such as that should not be decided at summary judgment. See also *Barnett v Whirlpool Corp*, 556 F3d 502, 519 (6th Cir 2009) (a discriminatory incident which "was too far removed in time and place from the other incidents alleged" could still serve as probative "background evidence" of discrimination); *United Air Lines, Inc v Evans*, 431 US 553, 558 (1977) (even discriminatory acts which are time-barred "may constitute relevant background evidence").

Moreover, even assuming Larsen's ageist attitudes do not rise to the level of direct evidence of discrimination, they are still relevant for proving pretext as part of the *McDonnell-Douglas* analysis. *Ercegovich v Goodyear Tire & Rubber Co*, 154 F3d 344, 354-55 (6th Cir 1998) (statements suggestive of age discrimination that do not rise to the level of direct evidence are still relevant for evaluating pretext).

### A.   A jury could easily reject Dykema's purported reasons for terminating Liebau.

Specifically, Dykema claims it fired Liebau because she purportedly failed to "maintain professional and respectful conduct," "comply with firm policies and procedures," and

"demonstrate satisfactory performance improvement" (**EX 20**, Termination letter). However, as explained below, Dykema either fabricated these reasons, or they did not actually motivate its decision to terminate Liebau.

    <u>False Reason #1</u>:    Liebau was unprofessional and disrespectful.

    In reality, the attorneys who managed Liebau on a daily basis and had the most interaction with her never observed Liebau behaving in an unprofessional or disrespectful manner (**EX 11**, Larsen pp 30:3-32:25; **EX 4**, Guise p 94:6-14).

    In its brief, Dykema cites one instance in which Liebau addressed Larsen and Choma as "honey." Almost two weeks after the "honey" comment, Choma sent Liebau a written reprimand alleging that Liebau's use of the word, among other things, was offensive (**EX 21**, Choma July 1 memo). Choma also accused Liebau of "mocking" Larsen. *Id.* However, Larsen admits that she was not offended by Liebau calling her "honey" and understood it to be Liebau's "informal way of talking" (**EX 11**, Larsen pp 60:13-61:1). Larsen also denies that Liebau ever mocked her or intended to be disrespectful towards her (*id*, pp 66:21-67:3). All of this begs the question: who was Liebau disrespectful to?

    More importantly, at the meeting where Liebau used the word "honey," both Larsen and Choma acknowledge Liebau complained of age discrimination (**EX 11**, Larsen pp 60:17-62:4; **EX 13**, Choma p 69:1-18). Yet, these serious allegations of discrimination do not even get a mention in Choma's July 1 memo.

    <u>False Reason #2</u>:    Liebau failed to comply with firm policies and procedures.

Dykema is not particularly clear which firm policies and procedures Liebau allegedly failed to comply with. However, in its brief Dykema mentions an email from Choma that references several alleged timekeeping and attendance infractions (See Def's Brief, EX 24). Interestingly, neither Choma's May 9 or July 1 memoranda, which served as the basis for Liebau's termination, make any reference to timekeeping or attendance. In fact, Choma's 2019 review of Liebau – completed just four months before Liebau's termination – states that Liebau's attendance and punctuality was "satisfactory" (**EX 15**, Choma 2019 performance review). The review also states that while Liebau allegedly had some timekeeping issues in 2018, those had been resolved (*id*). Furthermore, it is curious why Choma would be critical of Liebau's timekeeping since according to Choma, Liebau is an Administrative Assistant (not a paralegal) and nothing in the Administrative Assistant job description deals with billing time to clients (**EX 22**, Job Description). The other allegations in Choma's July 18, 2019 email to Liebau are grossly exaggerated (**EX 12**, Liebau Decl; **EX 1**, Liebau pp 234:24 – 235:24).

<u>False Reason #3</u>:    Liebau failed to make performance improvements.

Dykema cites several alleged performance issues that took place over the last few months of Liebau's employment to try to make the case that Liebau was a bad employee. However, every performance review from the relevant period states that Liebau was meeting expectations or better. No employee is perfect and Liebau may have had areas to improve. However, her immediate supervisor, Larsen, admitted that she was not aware of anything Liebau did that rose to the level of a terminable offense (**EX 11**, Larsen p 32:19-25). Larsen also admitted that while there was some friction between them, Liebau's "performance was

really good" (*id*, pp 56:6-57:25). In fact, to this day, the only reason Larsen would not work with Liebau in the future was because Liebau has accused her of dishonesty – not because of anything having to do with Liebau's job performance (*id*, p 84:2-4). Thus, a jury could conclude that none of the performance issues Dykema's cite in its brief could have possibly been significant enough to have been a factor in Liebau's termination.

As explained above, Liebau has cast sufficient doubt on whether these were the true reasons for her termination. Thus, this Court should deny summary judgment.

### B. Dykema's lack of candor regarding Liebau's purported misconduct raises serious doubt as to whether a jury will find any of its claims to be credible.

As explained by the examples above, Liebau has evidence to dispute all the reasons Dykema gives for firing her. However, Liebau need not raise issues of fact for <u>each</u> purported instance of misconduct in order to survive summary judgment. "If the defendant proffers a bagful of legitimate reasons, and the plaintiff manages to cast doubt on a fair number of them, the plaintiff may not need to discredit the remainder." *Fuentes v Perski*, 32 F3d 759, 764-765 n 7 (3d Cir 1994). *Fuentes* cautions courts when considering after-the-fact reasons an employer gives post-termination. Evidence calling into question the reasons as "*post hoc* fabrications, or otherwise not actually motivating the employment action*,*" survives summary judgment. *Id* at 764. If a jury finds just one of Dykema's stated reasons for termination to be incredible; a rational mind can disbelieve the remaining reasons. *Id* at 765; *Norfolk & W Ry Co v McKenzie*, 116 F2d 632, 635 (6th Cir 1941) ("*falsus in uno, falsus in omnibus*, … The jury may disregard the evidence altogether and should do so if the witness has willfully sworn

falsely to a material fact").

      C.    **Dykema's argument that Larsen was not a decision-maker for Liebau's termination is without merit.**

As an initial matter, Dykema's claim that only Choma and its human resources manager, Ayanna Clinton, played a role in the decision to terminate Liebau is suspect. While Larsen claims she has no idea why Dykema terminated Liebau and that she played no role in it, she also stated, "I don't know whether I was considering whether to terminate her or not, rather than should we continue having her work on this project …" (**EX 11**, Larsen pp 82:22-83:14). This admission suggests there was a time when Larsen was considering terminating Liebau, or at the very least raises a doubt as to whether Larsen had that authority. However, even if Choma was the ultimate decision maker, Larsen's age bias gets imputed to Choma under the "cat's paw" theory.

The term "cat's paw" refers to one used by another to accomplish his purposes, *Marshall v The Rawlings Company,* 854 F3d 368, 377 (6th Cir 2017). In the employment discrimination context, "cat's paw" refers to a situation in which an individual who lacks ultimate decision-making power (such as Larsen) uses the formal decisionmaker (Choma or Clinton) as a dupe in a scheme to trigger a discriminatory employment action. *Id; EEOC v Ford Motor Co*, 782 F3d 753, 768 (6th Cir 2015) (cat's paw holds the employer liable if its agent, "motivated by retaliatory animus, intended to cause [employee]'s termination and proximately caused the actual decisionmakers to terminate her").

*Marshall* goes on to explain that, "[t]he primary rationale for the cat's paw theory of

liability is that, because a company's organizational chart does not always accurately reflect its decisionmaking process, an employee of lower rank may have significant influence over the decisionmaker…The ultimate decisionmaker may be detached from day-to-day operations, and consequently apt to defer to the judgment of the [person] on the spot and at risk of being the conduit of [the lower-level decisionmaker's] prejudice." *Marshall*, 854 F3d at 378.

In *EEOC v New Breed Logistics*, 783 F3d 1057, 1069 (6th Cir 2015), the Sixth Circuit affirmed a jury's finding of liability as against an employer under this theory:

> Under the cat's paw theory of liability, we focus on whether an individual and not the actual decision-maker 'is the driving force behind the employment action.' Thus, when a decisionmaker acts in accordance with a [discriminator's] bias without herself evaluating the employee's situation, the [discriminator] clearly causes the tangible employment action, regardless of which individual actually enforces the adverse transfer or termination. Applying liability in this circumstance accords with agency principles in that 'the [discriminator] is the decisionmaker and the titular decisionmaker is a mere conduit for the [discriminator's] … animus.

*Id* at 1069 (internal citations omitted).

In this case, Liebau testified that she also complained to Choma about the wheelchair and that Choma failed to take any action. Liebau also testified that she told Choma about Larsen's age bias more than two months before her termination. Based on these facts alone, a jury could find Choma liable. However, even if that is not enough, Larsen's discriminatory intent is imputed to Choma and the human resources manager, Ayanna Clinton, who approved the decision to terminate Liebau. Choma and Clinton terminated Liebau based on information provided to her by Larsen. Dykema cannot hide behind the fact that Choma or

Clinton may not have personally participated in all the incidents of harassment and discrimination directed towards Liebau. *Staub v Proctor Hosp*, 562 US 411, 422 (2011) ("if a supervisor performs an act motivated by [discriminatory] animus that is intended by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable").

At a very minimum, all of these questions of fact render summary judgment improper.

## III.   Dykema is not entitled to summary judgment on Liebau's retaliation claim.

Even if a jury finds that Dykema did not discriminate against Liebau due to her age, a jury could still conclude that Liebau's termination was in retaliation for complaining of age discrimination.

Liebau accepts the elements of a *prima facie* retaliation case set forth by Dykema, but Dykema has its facts wrong. Liebau had complained of discrimination and unequal treatment on several occasions prior to June 18, 2019. On April 30, prior to being placed on probation, Liebau complained to Larsen that she was being discriminated against due to her age and might need to hire an attorney. Choma acknowledges that she had a discussion with Larsen the next day (May 1) about Liebau hiring an attorney. In his May 16 email to Choma, Guise admits that Liebau had previously complained to him of a hostile work environment. All of these complaints, when viewed in the light most favorable to plaintiff, are sufficient to be protected activity.

Moreover, Dykema is wrong to dismiss Liebau's repeated complaints about the wheelchair as "not a complaint of age discrimination." Given the circumstances surrounding

the placement of the wheelchair (namely, to mock Liebau's turning 50), it does not take much inference to realize when Liebau repeatedly complained about the wheelchair she was complaining about age bias. Larsen obviously knew why it was their in the first place.

Regarding causation, the Sixth Circuit has held that "[w]here an adverse employment action occurs very close in time after an employer learns of a protected activity," temporal proximity alone may be enough to show causal connection. *Mickey v Zeidler Tool & Die Co*, 516 F3d 516, 525 (6th Cir 2008) (collecting cases); see also *Bryson v Regis Corp,* 498 F3d 561, 571 (6th Cir 2007) (three months from the protected activity to adverse action was sufficient to show temporal proximity and noting that a plaintiff's burden to establish a prima facie case is not "onerous"). Even assuming the two months between when Dykema claims Liebau first reported discrimination, and her termination, is not enough on its own to show causation, Liebau can satisfy the causation prong by calling into question that legitimacy of the subsequent criticisms she received from Choma. As explained above, Liebau can show how allegations in Choma's July 1 memo, which came after her complaint of discrimination, were completely unfounded. Liebau has also shown how the subsequent allegations made by Choma in her July 18, 2019 email to Liebau are also false (**EX 12**, Liebau Decl). Plaintiff can even show that ever since Larsen reported Liebau's complaint of discrimination to Choma on May 1, Choma increased her scrutiny of Liebau and wrote her up for doing things other employees had always done and were not reprimanded for (*id*). See *Jones v Potter,* 488 F3d 397, 408 (6th Cir 2007) (an employer cannot conceal an unlawful discharge by closely observing an employee and waiting for an ostensibly legal basis for discharge to emerge);

Choma's monitoring of Liebau's timecard entries *daily*, even though firm policy says the timecards are to be reviewed by supervisors *weekly*, certainly fits the bill (**EX 23**, Dykema's timecard policy). See also *Moore v Kuka Welding*, 171 F3d 1073 (6th Cir 1999) (more frequent write-ups of plaintiff for trivial matters and unwarranted criticism of plaintiff's work, when viewed as a whole, supported the jury's finding that the defendant retaliated against the plaintiff for engaging in protected activity).

In Section II, above, Liebau sets forth evidence casting doubt on Dykema's alleged reasons for firing her. For those same reasons, a jury could determine that Dykema retaliated against Liebau for reporting discrimination on April 30, and/or on June 18. For these reasons, Dykema is not entitled to summary judgment on Liebau's retaliation claim.

## CONCLUSION

The record demonstrates that age played a role in Dykema's decision to fire Liebau. Dykema is free to argue that it really terminated Liebau for the reasons stated in its termination letter. But Liebau is equally entitled to have a jury determine the *real* reason Dykema fired her. Liebau has offered sufficient evidence precluding this Court from granting defendant summary judgment.

<table>
<tr><td>

**PROOF OF SERVICE**

I certify that on September 1, 2022, I filed the foregoing paper with the Clerk of the Court using the ECF system which will electronically send notification to all counsel of record.

/s/Brian J. Farrar _____
Sterling Attorneys at Law, P.C.
33 Bloomfield Hills Pkwy., Ste. 250
Bloomfield Hills, MI 48304
(248) 644-1500

</td><td>

Respectfully submitted,

STERLING ATTORNEYS AT LAW, P.C.

By:___/s/Brian J. Farrar_____
        Raymond J. Sterling (P34456)
        Brian J. Farrar (P79404)
        Attorneys for Plaintiff
        33 Bloomfield Hills Pkwy., Ste. 250
        Bloomfield Hills, MI 48304
        (248) 644-1500

</td></tr>
</table>