UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KATHLEEN L. LIEBAU,

Plaintiff,

v.

DYKEMA GOSSETT, PLLC,

Defendant.

Case No. 21-cv-11823
Honorable Shalina D. Kumar
Magistrate Judge David R. Grand

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT (ECF NO. 20)**

## I.    INTRODUCTION

Plaintiff Kathleen Liebau brings suit against defendant Dykema

Gossett, PLLC, her former employer, claiming age discrimination and

retaliation in violation of the Age Discrimination in Employment Act (ADEA),

29 U.S.C. §§ 621 *et seq*., and Michigan's Elliot-Larsen Civil Rights Act

(ELCRA), M.C.L. §§ 37.2101 *et seq*. ECF No. 1. Dykema filed a motion for

summary judgment, which is fully briefed. ECF Nos. 20, 24, 26. The Court

held a hearing on the motion on January 25, 2023 and the matter is now

ready for determination. For the reasons set forth below, the Court

**GRANTS** Dykema's motion.

## II.   FACTS

Liebau was born in 1965 and had worked in various administrative capacities for Dykema since 1985. ECF No. 24-2, PageID.469, 480-82. For many years, Liebau successfully worked on litigation discovery projects under the supervision of attorney Clay Guise. ECF No. 24-5, PageID.620. From 2010 through 2017, Liebau worked on the team assigned to a litigation project relating to speed control deactivation switches (SCDS). *Id*. at PageID.627. As evidenced by her evaluations from this period, the quality of her work on this team was consistently exemplary. *See, e.g.*, ECF Nos. 24-6, 24-7, 24-8, 29-1.  Notwithstanding the laudable nature of her work overall, supervisors noted isolated instances of inappropriate or unprofessional communication, documented in her personnel file as early as 2014. ECF No. 20-9; ECF No. 24-5, PageID.621-629; ECF Nos. 24-7, 29-1.

The volume of Dykema's SCDS work steadily declined, and Liebau was reassigned to a different automotive litigation project in the latter part of 2017. This project, relating to California warranty claims, was also overseen by Guise, but another Dykema attorney, Chelsea Larsen, directly supervised Liebau on the project. Larsen and Guise evaluated Liebau's work on this project favorably but identified areas for improvement. ECF No. 20-10, PageID.379; ECF No. 20-14, PageID.393.

Even shortly before Liebau's assignment to the California warranty cases, issues relating to her professional communications and demeanor began surfacing with more frequency. ECF No. 20-9; ECF No. 20-14. Liebau's direct supervisor, office manager Susan Choma, noted on Liebau's 2017 performance evaluation (reflecting her 2016 performance) that Guise reported that Liebau had "a few issues with a difficult client" and counseled her that her confidence in her views "leads to opinions/statements that are better off left unsaid." ECF No. 20-9, PageID.373. Liebau's 2018 Administrative Assistant Feedback Form from Guise noted that Liebau's willingness to speak her mind often resulted in the sharing of good or useful ideas but that Liebau could also "be resistant to ideas that are different from hers . . . and this is an area for improvement." ECF No. 20-14, PageID.393. Her 2018 performance evaluation from Choma also reflected issues with communication: Liebau repeatedly failed to notify Choma when she was running late and Liebau needed to improve her active listening skills. ECF No. 20-16, PageID.396. Choma also noted that Liebau was confrontational, disrespectful, and demonstrated no regard for her authority. *Id*. Liebau's 2019 performance evaluation (reflecting upon her 2018 performance) indicated that she met or exceeded expectations in all categories. ECF No. 24-16. It noted some

instances of miscommunication with Larsen, but Choma remarked that "these issues have improved." *Id.* at PageID.777.

Choma and Liebau met to review the 2019 performance evaluation in April 2019. ECF No. 24-17. Choma sensed that Liebau was not pleased with her review, but she did not voice disappointment during the meeting. *Id.* Liebau did express concern over her performance evaluation to Larsen and Larsen's administrative assistant, Shannon Stewart. *Id.*

On Monday, April 29, 2019, Larsen emailed Liebau to request she run a conflict check and open a new matter. Liebau responded verbally to Larsen, asking if Stewart, who was on vacation that week, could do it when she returned because Liebau did not have all the information needed to carry out the task. Larsen indicated that the task could not wait for Stewart's return and that Liebau could secure the needed information from Guise. ECF No. 24-19. Liebau copied Larsen on an email she sent at 5:26 p.m. on Friday, May 3 to Stewart, forwarding Larsen's request for the conflict check for her to complete on her return. *Id.* ECF No. 24-18. Later that evening, Larsen emailed Liebau, reprimanding her for defying the express instruction not to save the conflict check for Stewart, for not informing her until the end of the business week that she had not completed the assigned task, and for substituting her own judgment for that

of Larsen. *Id*. Liebau did not respond to Larsen's scolding email. Larsen forwarded her email reprimanding Liebau for holding the conflict check for Stewart to complete to Choma. *Id*.

After consulting with her supervisor, Choma directed a memorandum to Liebau, placing her on a ninety-day probation based on her "blatant refusal to honor the directives of one of the attorneys" she supports. ECF No. 20-7, PageID.369; ECF No. 24-19. Choma delivered the probationary memorandum to Liebau in a meeting also attended by a Dykema human resource specialist. ECF No. 24-17, PageID.781. Choma's notes indicate that Liebau related her side of the conflict check incident. *Id*. Liebau denied a conversation about saving the task for Stewart ever took place and did not understand Larsen's remark about asking Guise for information to be a directive. *Id*. Liebau asserts that she explained to Choma that Larsen's allegations against her were false and tried to present the chain of emails between her and Larsen regarding the conflict check to prove that Liebau's version was the truth, but that Choma refused to consider the emails. ECF No. 24-13. Choma noted that Liebau displayed a disrespectful demeanor toward her and refused to sign the memorandum. ECF No. 24-17, PageID.781.

Liebau complained to Guise about being placed on probation and referred to her work conditions as a "hostile environment." *Id*.; ECF No. 24-20. She asked Guise if she could be reclassified as a legal assistant or paralegal in order to be removed from Choma's supervision and possibly reassigned from the California warranty project. ECF No. 24-19; ECF No. 24-20. Guise told her she would have to pursue that with Choma. ECF No. 24-20.

Choma documented another instance of "disrespectful and unprofessional conduct" from Liebau in a memorandum dated July 1, 2019. ECF No. 24-22. The memo recounts a June 14, 2019 exchange between Liebau and Larsen, when, in the course of discussing work, Liebau complained that she was criticized for errors despite the fact that she was correcting errors in paralegal work before sending it on to Larsen. *Id*. As Larsen began to discuss this issue (of which she had not been aware), Liebau threw up her hands and stated that she could not talk to Larsen without getting in trouble. *Id*. at PageID.791. Liebau announced to Larsen that she was "on probation because of a 'fake conversation' . . . Larsen fabricated." *Id*. Liebau then walked away from her workstation and Larsen. This exchange occurred in an open, public work area. *Id*.

The memo also details the June 18, 2019 meeting between Choma, Larsen, and Liebau to discuss Liebau's behavior. The memo describes Liebau's demeanor at the meeting as confrontational and disrespectful. *Id*. Choma recounts that, during the meeting, Liebau referred to both her and Larsen as "honey" in a condescending manner, and Choma reprimanded her for her inappropriate, offensive attitude and reminded her of her probationary status. *Id*. Throughout the meeting, Liebau accused Larsen of being dishonest about a prior conversation, while Larsen attempted to remind Liebau of the conversation. *Id*. According to Choma's memo, Liebau mocked Larsen, repeating her words using condescending tones and gestures. *Id*. The memo states: "This conduct is unacceptable and will not be tolerated." *Id*. It warns Liebau that she is "not on a trajectory to successfully complete [her] probation," and that the memo constitutes her "final notice . . . that your attitude and workplace conduct must improve immediately, including demonstrating respect for your supervisor [Choma] and . . . Larsen in all of your communications." *Id*. The memo further instructs Liebau not to avoid communications with Larsen and reminds that she is expected to "communicate regularly and professionally" to provide exceptional service to the Dykema attorneys she supports and their clients. *Id*. The memo concludes:

Please note that any additional disrespectful outbursts and other unprofessional conduct while you are on probation may . . . result in immediate termination. However, if at the end of the 90-day period your performance and professional conduct has improved to a satisfactory level, your employment status will return to normal, and you will be required to maintain a satisfactory performance, including professional conduct, throughout your employment.

*Id*. at PageID.792.

Choma's notes from the June 18, 2019 meeting report that Liebau articulated that Larsen's motivation (for lying about the conflict check conversation) was age discrimination because Liebau was older than the paralegal working on the California warranty cases, Robin Kowalski. ECF No. 24-17, PageID.781. Liebau noted that only she, and not the younger Kowalski, was criticized for mistakes in her work. *Id*. Larsen disclaimed knowledge of either Kowalski's or Liebau's age. *Id.*

Choma documents that during this June 2019 meeting, Liebau complained that three years earlier, at the office celebration for her fiftieth birthday, Larsen brought in a wheelchair as a gag, but that the wheelchair continued to occupy the empty workstation next to Liebau. *Id*. Choma notes that Liebau complained of being offended by the wheelchair's presence but did not mention it to Larsen (or Choma) before the June 2019 meeting. *Id*. Choma's notes report that she

removed the wheelchair immediately after the meeting. *Id*. at PageID.782. Choma notes Liebau also complained of her unfair performance review, "low merit," and a title change that occurred more than eighteen months earlier. *Id*.

After the July 1 memorandum delivered to Liebau at a meeting that same day, Liebau took a scheduled vacation. Liebau prepared an out-of-office notice indicating Stewart could be contacted during her absence. Stewart consented to serving as a contact but cautioned Liebau that she too would out of the office two of the days Liebau would be away and suggested Liebau identify either Choma or Larsen as the person to contact for the two days both Stewart and Liebau would be away. ECF No. 20-20. According to Choma's notes, Liebau never changed the out-of-office notice. ECF No. 24-17. When Choma addressed this with Liebau after her return, Liebau reported she was too busy to change the out-of-office notice and was not permitted to incur overtime in order to make the change. *Id*. Choma also noted several timekeeping and time entry irregularities for Liebau in the later part of July 2019, including time entered in advance of the time worked. *Id*. Liebau's probationary period ended on August 16, 2019 and Dykema terminated her employment on August 23, 2019,

based on her failure to maintain professional and respectful conduct, comply with firm policies and procedures, and to demonstrate satisfactory performance improvement. ECF No. 24-21.

Liebau asserts that she was terminated due to age discrimination and in retaliation for her complaints about that discrimination. Liebau contends that Larsen first directed age animus toward her three years before her termination, before Liebau was assigned to the project supervised by Larsen. According to Liebau, Larsen decorated Liebau's workstation with pill bottles, adult diapers, and a wheelchair to celebrate her fiftieth birthday. ECF No. 24-2, PageID.485-86; ECF No. 24-12, PageID.689. Liebau maintains that she complained to Larsen about the wheelchair shortly after the party in October 2015. ECF No. 24-2, PageID.488, 491. She testified at deposition that, after the party, she placed the other gag decorations onto the wheelchair and rolled it into Larsen's office, but that the following morning, the wheelchair was back at her workspace. *Id*. at PageID.488. Liebau also testified that she asked Choma to store the wheelchair elsewhere after Choma asked to borrow it, but that it remained near her workspace. *Id*. at PageID.489. She testified that, at the June 2019 meeting with Choma and Larsen, she escalated her

complaints and threatened to file an age discrimination suit against Dykema if the wheelchair was not removed. *Id*.

In addition, Liebau testified that she realized Larsen had issues with her age because she regularly asked about or commented on her plans to retire. ECF No. 24-2, PageID.488, 495, 499, 500. Liebau testified at deposition that Larsen began raising the issue of Liebau's retirement in conjunction with her fiftieth birthday celebration and continued to raise the subject with Liebau. *Id*.

## III.   ANALYSIS

### A. Standard of Review

If a party moves for summary judgment, it will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to

require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). Furthermore, the evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co.*, *Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the movant establishes a lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). That is, the party opposing a motion for summary judgment must make an affirmative showing with proper evidence and must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'" *Brown v. Scott*, 329 F. Supp. 2d 905, 910 (E.D. Mich. 2004) (quoting *Anderson*, 477 U.S. at 252). To fulfill this burden, the non-moving party need only demonstrate the minimal standard that a jury could ostensibly find in his favor. *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario*, *Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the

non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 251.

The court's role is limited to determining whether there is a genuine dispute about a material fact, that is, if the evidence in the case "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Such a determination requires that the court "view the evidence presented through the prism of the substantive evidentiary burden" applicable to the case. *Id*. at 254. Hence, if plaintiffs must ultimately prove their case at trial by a preponderance of the evidence, then on a motion for summary judgment, the court must determine whether a jury could reasonably find that the plaintiffs' factual contentions are true by a preponderance of the evidence. *See id.* at 252-53. Finally, if the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the movant is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

The court must construe Rule 56 with due regard not only for the rights of those "asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury," but also for the

rights of those "opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Id*. at 327.

## B. Age Discrimination

ADEA and ELCRA prohibit an employer from discriminating against employees based on age. 29 U.S.C. § 623(a)(1); M.C.L. § 37.2202(1)(a). Under both the ADEA and ELCRA, a plaintiff must show that but-for his age, his employer would not have taken the adverse action. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 178 (2009) (ADEA); *Drews v. Berrien Cty*., 839 F. App'x 1010, 1012 (6th Cir. 2021) (citing *Hecht v. National Heritage Academies, Inc.*, 886 N.W.2d 135, 146 (Mich. 2016)) (ELCRA); *see also Rouch World, LLC v. Dep't of Civil Rights*, 2022 WL 3007805, at *8, *10, ___ N.W.2d___ (Mich., July 28, 2022) (adopting the but-for causation standard applied to federal discrimination claims for ELCRA discrimination claims). Satisfying but-for causation requires plaintiffs to show "that age was the determinative reason they were terminated." *Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 324 (6th Cir. 2021).

Courts analyze discrimination claims under the same framework for both the federal and state statutes. *Drews*, 839 F. App'x at 1012. Plaintiffs may establish ADEA or ELCRA violations through either direct or

circumstantial evidence. *Tilley v. Kalamazoo Cty. Road Comm'n*, 777 F.3d 303, 307 (6th Cir. 2015) (citing *Greiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009)). Courts apply the familiar *McDonnell Douglas* burden-shifting framework to age discrimination claims such as this one, which are based on circumstantial evidence. *Greiger*, 579 F.3d at 622; *see generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). Under this burden-shifting framework, Liebau first must establish a *prima facie* case of age discrimination. *Drews*, 839 F. App'x at 1012. If she does so, Dykema must "articulate some legitimate, nondiscriminatory reason" for terminating her employment. *McDonnell Douglas*, 411 U.S. at 802. The onus then falls to Liebau to produce evidence sufficient for a jury to find that the proffered reason is "pretext designed to mask discrimination." *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 812 (6th Cir. 2011).

### 1.   *Prima Facie* Case

To establish a *prima facie* case of age discrimination, Liebau must show that (1) she was a member of a protected class (older than 40 years old); (2) she suffered an adverse employment action; (3) she was qualified for the position held; and (4) she was replaced by someone outside the protected class or similarly situated non-protected employees were treated more favorably. *Pelcha*, 988 F.3d at 326. Liebau's burden to establish a

prima facie case is "light…easily met, and not onerous." *Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 808 (6th Cir. 2020) (quoting *Provenzano*, 663 F.3d at 813).

The parties do not dispute the first three factors: Liebau was over forty years old when she was terminated from a position she had held for over thirty years. Dykema asserts that Liebau fails to satisfy the fourth element of her prima facie case because she was replaced by an employee older than she was, and she cannot identify a similarly situated non-protected employee who was treated more favorably. Liebau argues that Kowolski, the younger paralegal on the California warranty project, was treated more favorably. But the evidence Liebau points to in support of this argument falls short.

To establish a dispute of fact over whether a plaintiff was similarly situated to other employees outside her protected class, a plaintiff is "required to prove that all of the relevant aspects of h[er] employment situation were nearly identical" to a specific individual. *Ercegovich v. Goodyear Tire & Rubber Co.*,154 F.3d 344, 352-53 (6th Cir. 1998). Even if relevant aspects of an employment situation were sufficiently alike to render another employee a comparator to plaintiff, when a termination is disciplinary in nature, the plaintiff must show that proposed comparators

engaged in acts of "comparable seriousness." *Wright v. Murray Guard, Inc.*,

455 F.3d 702, 710 (6th Cir. 2006) (quoting *Clayton v. Meijer*, *Inc.*, 281 F.3d

605, 611 (6th Cir. 2002)).

To make this assessment, courts look to several factors, such as

whether the individuals "have dealt with the same supervisor, have been

subject to the same standards and have engaged in the same conduct

without such differentiating or mitigating circumstances that would

distinguish their conduct or the employer's treatment of them for it."

*Ercegovich*, 154 F.3d at 352 (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d

577, 583 (6th Cir. 1992)).

Dykema argues that Kowalski is not a proper comparator because

she was a paralegal, not an administrative assistant, and Choma was not

her supervisor. Yet, as Dykema also argues, the Court need not assess

Kowalski as a comparator because Liebau has not pointed to any evidence

that Kowalski engaged in any of the same conduct that resulted in Liebau's

termination.

Notwithstanding her failure to show that she was replaced by

someone younger or that a similarly situated younger employee was

treated more favorably, Liebau argues that she can satisfy the fourth

element of a prima facie case of age discrimination based on Larsen's

allegedly ageist conduct and remarks. The Sixth Circuit has noted that circumstances where the employer replaced a plaintiff with a younger employee or treated a similarly situated, non-protected employee more favorably are but two "context-dependent ways by which plaintiffs may establish a prima facie case, and [are] not rigid requirements that all plaintiffs with similar claims must meet regardless of context." *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 529 (6th Cir. 2007), *overruled on other grounds by*, *Gross*, 557 U.S. 167 (2009); *see also*, *Willard,* 952 F.3d at 808 (reciting fourth element of *prima facie* case of indirect age discrimination as "circumstances that support an inference of discrimination"). "The key question is always whether, under the particular facts and context of the case at hand, the plaintiff has presented sufficient evidence to permit a reasonable jury to conclude that [the plaintiff was terminated] under circumstances giving rise to an inference of unlawful discrimination." *Blair*, 505 F.3d at 529.

Courts have deemed allegedly ageist comments or conduct "sufficient to raise a plausible inference of discrimination," thereby satisfying the final element of a *prima facie* case. *See Pelcha*, 988 F.3d at 326; *see also Blair*, 505 F.3d at 529-30. In *Pelcha*, for example, the court found that the comments of the defendant employer's president and CEO, including those

about plaintiff's "shelf-life" and "expiration date," as well as requests to plaintiff to retire to "make everyone happy," supplied a plausible inference of discrimination to satisfy the fourth *prima facie* element in plaintiff's indirect discrimination claim notwithstanding their inability to support a direct evidence discrimination claim. *Id*. at 325-26. Likewise, the *Blair* court found that defendant employer's vice president of sales' alleged references to plaintiff as "old man" and comments that he was "too old" to manage certain accounts may not have established direct evidence of discrimination but were more than sufficient as circumstantial evidence that defendant terminated plaintiff for impermissible reasons. *Blair*, 505 F.3d at 529-30.

Relying on *Blair*, Dykema argues that Larsen's lack of authority in personnel matters defeats Liebau's prima facie case of discrimination. ECF No. 26, PageID.827. The *Blair* court did note that the ageist comments at issue in that case could be "legally insufficient to satisfy [plaintiff's] *prima facie* case" if the vice president lacked authority regarding personnel decisions. *Id.* at 530-31. However, the authority the *Blair* court relied upon for this conclusion held that statements by non-decisionmakers are insufficient to show discriminatory animus *at the pretext stage* of the discrimination claim analysis. *See Leggett v. Wire Co.*, 220 F.3d 752, 759 (6th Cir. 2000) and *Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir.

1998); *see also Ercegovich*, 154 F.3d at 354. Unlike the plaintiff's light burden to establish a prima facie case, the plaintiff's burden to prove a proffered explanation was a pretext for discrimination is the much more stringent preponderance-of-the-evidence standard. *Id*. That courts consider comments legally insufficient under a heavy burden of proof does not compel the conclusion that they are deficient under a lighter one. Accordingly, this Court is not persuaded that Larsen's lack of authority over personnel matters precludes it from accepting her alleged ageist comments and conduct as the requisite circumstantial evidence of discrimination for a *prima facie* case. Viewing the record in the light most favorable to Liebau, as it must, the Court finds that Larsen's age-mocking birthday decorations and her repeated comments about Liebau's retirement support an inference of discrimination sufficient to satisfy the lenient *prima facie* burden.

## 2. Pretext

The parties do not dispute that Dykema carried its burden by providing a nondiscriminatory reason for Liebau's termination, namely that it terminated Liebau for her failure to maintain professional and respectful conduct, comply with firm policies and procedures, and to demonstrate satisfactory performance improvement during her probationary period. *See*

*Pelcha*, 988 F.3d at 326. The burden thus shifts back to Liebau to show that the cited conduct problems were "only a pretext to conceal that the true motive for her firing was her age." *Id*. Liebau can establish pretext if she can show that Dykema's stated reason for terminating her (1) had no basis in fact, (2) did not actually motivate its decision, or (3) was insufficient to motivate its decision. *Drews*, 839 F. App'x at 1012 (citing *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009)).

### a.  No Basis in Fact

Liebau argues that Dykema's proffered reasons for termination were pretext because they have no basis in fact. Specifically, she argues that the cited unprofessional and disrespectful conduct had no basis in fact because, in her deposition testimony, Larsen disputed that Liebau had mocked or intended to be disrespectful to her. ECF No. 24, PageID.456. Liebau also argues that her asserted failure to comply with firm policies and procedures relating to time keeping has no basis in fact because it was not documented in either of the memoranda issued relating to her conduct and her job description does not require her to tabulate her time for billing purposes. *Id*. at PageID.457.

Although the Court must view the evidence in the light most favorable to Liebau, it need not accept her unsubstantiated gloss on the evidence.

*Drews*, 839 F. App'x at 1013 (quoting *Noble v. Brinker Int'l, Inc*., 391 F.3d 715, 729 (6th Cir. 2004)). Indeed, the record evidence belies Liebau's arguments. First, Larsen's testimony does not dispute Choma's assessment of Liebau as mocking and disrespectful. When asked if Liebau had ever mocked her, Larsen responded: "I think she changed her tone of voice when she was repeating something I had said." ECF No. 24-12, PageID.683. Asked if she interpreted that to be mockery, Larsen responded: "It's not the kind of thing that I would have thought about. I don't think her intent was to be disrespectful." *Id*. at PageID. 683-84. That Larsen was not insulted or offended by Liebau's conduct does not render her supervisor's assessment of it as unprofessional and disrespectful false. Moreover, Liebau's mocking and disrespectful tone at the June 2019 meeting with Larsen and Choma was only one of multiple instances of Liebau's unprofessional conduct. Liebau does not refute the occurrence or the impropriety of her public eruption at Larsen, which prompted the June 2019 meeting, or any of the other instances of unprofessional conduct documented by Choma. *See* ECF No. 24-17.

Liebau's assertions that her stated failure to comply with firm policies and procedures has no basis in fact are likewise unavailing. The time keeping anomalies Liebau questions were not raised by Choma in the May

9 or July 1 memoranda because they were not discovered until the latter part of July. Further, Choma contemporaneously addressed these time-keeping and other compliance issues with Liebau by way of email. ECF No. 20-25. Notably, Choma's email outlines the billable time requirements for attorneys and legal specialists for time spent servicing clients. *Id*. at PageID.415. Liebau does not refute the applicability of those rules to her in her response to Choma's email. *Id*.

"To show pretext on the ground that the reason for termination had not basis in fact, a plaintiff 'must provide evidence that the employer's allegations never happened.'" *Pelcha*, 988 F.3d at 326 (quoting *Miles v. S. Central Human Resource Agency, Inc.*, 946 F.3d 883, 888-89 (6th Cir. 2020)). Because Liebau fails to put forth such evidence, no reasonable juror could conclude that Dykema's proffered reasons for terminating her are not based in fact. *See Miles*, 946 F.3d at 890.

### b.  Larsen's Age-related Comments as Motivation

Liebau ostensibly argues that Larsen's comments about her retirement and her actions in connection with Liebau's fiftieth birthday are evidence of pretext (i.e., reflect the actual motivation for her termination). Statements and actions by non-decisionmakers cannot alone prove pretext. *E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 768 (6th Cir. 2015). Nor "can

decisionmakers' statements or actions outside of the decisionmaking process" establish pretext. *Id.* (citing *Bush*, 161 F.3d at 369 and *Rowan v. Lockheed Martin Energy Sys. Inc.*, 360 F.3d 544, 550 (6th Cir. 2004)).

The *E.E.O.C. v. Ford* case is particularly instructive here.  In that case, like the one at bar, the complainant alleged that her direct supervisor engaged in discriminatory and/or retaliatory conduct before she was ultimately terminated for poor performance. *Id.* at 759-60. The court explained that, as the complainant's direct supervisor, "he of course had an *effect* on her termination" in that he "reported her failures during the performance-enhancing plan to his supervisors." *Id.* at 768. But the court noted that it does not define decisionmaker so broadly and that a supervisor with "no direct relation to the actual termination decision" is not a decisionmaker for these purposes. *Id.* "[C]ritically (and undisputedly), no one at Ford consulted with or received a recommendation from [the direct supervisor] before making its termination decision." *Id.*

The same scenario presents here. Larsen was Liebau's direct supervisor and the only individual Liebau alleges demonstrated age-based animus toward her. ECF No. 24-2, PageID.567. As the direct supervisor did in *Ford,* Larson influenced Liebau's termination by reporting her performance problems to the office manager, Choma. But, also like the

direct supervisor in *Ford*, Larsen was not consulted and did not recommend Liebau's termination. ECF No. 24-12, PageID.673-74. On this basis, Larsen's alleged age animus cannot be imputed to Dykema.

Nor can Larsen's comments and conduct be imputed to Dykema under the "cat's paw" theory. "Cat's paw" is the phrase used to describe a person used by another to accomplish his purpose. *Marshall v. The Rawlings Company*, *LLC*, 854 F.3d 368, 377 (6th Cir. 2017) (internal citations omitted). In the employment litigation context, this theory refers to situations in which a biased subordinate, who lacks decision-making power, uses the formal decisionmaker "as a dupe in a deliberate scheme to trigger a discriminatory employment action." *Id*. To meet the burden under this theory, a plaintiff must establish that the decisionmaker was the instrument of a "biased subordinate" who made a "biased recommendation" seeking a plaintiff's discharge. *Id.* at 379-80. "[A]n employer is liable for the discriminatory animus of an intermediate actor who intends to cause, and in fact . . . causes, 'an adverse employment decision.'" *Sloat v. Hewlett-Packard Enter. Co.*, 18 F.4th 204, 210 (6th Cir. 2021) (quoting *Staub v. Proctor Hosp.*, 562 U.S. 411, 421 (2011)). A plaintiff must supply evidence to support a finding of animus, intent, and causation on the part of the manipulating actor. *See id*.

Liebau has not established that Larsen made a biased recommendation for her to be discharged. In fact, Liebau identifies no evidence in the record to support this argument. To the contrary, Larsen's undisputed testimony indicates that she did not even favor reassigning Liebau to another project, to say nothing of termination. When Guise asked Larsen's opinion on whether Liebau should be replaced on the project, she voiced her opposition, choosing instead to continue efforts to improve the problems with Liebau with better communication and management. ECF No. 24-12, PageID.674. Without evidence that Larsen intended her termination, Liebau has not met her burden of production and her cat's paw argument fails.

The Court finds that Larsen was not a decisionmaker for Liebau's termination and that there is no evidence that Larsen intended for Liebau to be terminated. Accordingly, Larsen's allegedly ageist comments and conduct cannot be imputed to Dykema as evidence that its proffered reason for termination was pretext. Liebau's discrimination claims under the ADEA and ELCRA do not survive the motion for summary judgment.

### C. Retaliation

Liebau alleges that her termination was the result of both discrimination and retaliation for complaining about age discrimination.

The ADEA prohibits employers from retaliating against an employee for opposing or reporting age discrimination. 29 U.S.C. § 623(d). A plaintiff must establish that 1) she engaged in a protected activity, 2) the defending party was aware that the plaintiff had engaged in that activity, 3) the defending party took an adverse employment action against the employee, and 4) there is a causal connection between the protected activity and the adverse action. *Bledsoe v. Tennessee Valley Authority Bd. of Directors*, 4 F.4th 568, 587 (6th Cir. 2022). "To prove a causal connection, a plaintiff must produce sufficient evidence from which an inference can be drawn that the defendant took the adverse employment action because the plaintiff engaged in protected activity." *Id*. (internal quotation and marks omitted). If a plaintiff establishes a prima facie case of retaliation, the burden of production shifts to defendant to proffer some legitimate, nonretaliatory reasons for its actions. *Id*. To the extent an employer proffers such reasons, the burden of persuasion shifts back to the plaintiff to show that the proffered reasons were not the true reasons for the employment decision, i.e., that the reasons were a pretext for retaliation. *Id*.

The parties dispute whether Liebau can establish the causation element for a *prima facie* retaliation case. Liebau argues that Dykema's adverse employment actions against her began immediately after it learned

of her complaints of age discrimination, and that this temporal proximity alone satisfies the but-for causation required for a *prima facie* retaliation case. The Sixth Circuit has held that temporal proximity between a discrimination complaint and an adverse employment action alone can be enough to survive a motion for summary judgment. *Id.* "But when some time elapses between when the employer learns of the protected activity and subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Id.* (quotation omitted).

Dykema maintains that the two months between Liebau's clearly articulated complaint of age discrimination during the June 2019 meeting and her August 23, 2019 termination is not temporally proximate enough to satisfy the causation requirement alone. Liebau counters that she in fact first complained of age-based discrimination on April 30, 2019, a mere nine days before being placed on probation. Dykema argues that Liebau's assertion in her declaration that she asserted age discrimination on April 30, 2019 must be ignored because it contradicts her sworn deposition testimony. ECF No. 24-13, PageID.711-12; ECF No. 20-2, PageID.298-99; ECF No. 20-3, PageID.311; ECF No. 26-1, PageID.837.

The Court agrees that it may not consider declaration testimony in conflict with sworn deposition testimony, absent a compelling explanation for the disparity. *See Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 908 (6th Cir. 2006). Despite much questioning on the subject of when and to whom she complained of Larsen's age bias, Liebau never suggests she did so before May 9, and she disavowed ever discussing hiring an attorney with Larsen. ECF No. 20-3, PageID.311; ECF No. 26-1, PageID.837. But Liebau's declaration testimony aside, Larsen testified that Liebau mentioned to her that she was concerned about getting fired and "thought maybe she needed to get an attorney." ECF No. 24-12, PageID.683. Choma's notes corroborate that Larsen told her that, on April 30, 2019, Liebau met with Larsen to discuss a case and proceeded to discuss her 2019 annual review, describing it as the worst she had ever had, and commented that "she is wondering if she needs to get an attorney because she is concerned she is going to get fired." ECF No. 24-17, PageID.780.

To establish she engaged in a protected activity, "a plaintiff . . . must prove that she took an overt stand against suspected illegal discriminatory action." *Blizzard v. Marion Technical College*, 698 F.3d 275, 288 (6th Cir. 2012) (internal quotations omitted). "[A]n employee may not invoke the protections of the [ADEA] by making a vague charge of discrimination." *Id*.

(internal quotations omitted). Liebau's comments, made to Larsen and reported to Choma, express an oblique concern about being fired and needing an attorney. They do not refer to discrimination or age. The Court finds that these comments do not constitute an overt stand against suspected illegal discriminatory conduct and thus cannot be deemed a protected activity.

Liebau did directly assert her age-based discrimination claims on June 18, 2019. ECF No. 24-2, PageID.489; ECF No. 24-17, PageID.781. By this date, Liebau had been on probation for over a month and had already run afoul of her probation, which was the basis for the meeting at which she asserted her discrimination claim. "An employee cannot allege discrimination like a protective amulet when faced with the possibility that [her] preexisting disciplinary problems could lead to [her] termination." *Beard v. AAA of Mich.*, 593 F. App'x 447, 451 (6th Cir. 2014). Nor is "an employer bound to cease all investigation of an employee merely because the employee alleges discrimination." *Id*. "Evidence that an employer proceeded along lines previously contemplated, though not yet definitively determined, in taking its adverse employment action is no evidence whatever of causality." *McKinnon v. L-3 Communications Corp.*, 814 F. App'x 35, 45 (6th Cir. 2020) (quoting *Montell v. Diversified Clinical Servs.*,

*Inc.*, 757 F.3d 497, 505 (6th Cir. 2014) (marks omitted)); *see also Bledsoe*, 42 F.4th at 588. In the disciplinary context, the temporal proximity of the employer's adverse action to the employee's protected activity can be evidence of causation only if the employer deviates from the previously contemplated action or the schedule for that action. *McKinnon*, 814 F. App'x at 46.

Before and after Liebau's allegation, Dykema disciplined Liebau for insubordination and unprofessional, disrespectful conduct toward the supervising attorney for her assigned project and her office manager. As set forth in the multiple memoranda regarding her probation, Dykema terminated Liebau's employment based on her failure to correct her conduct and compliance after the ninety days allotted for improvement. ECF No. 24-21. Further, that the termination came two months after Liebau's complaint, without any other evidence that the protected activity caused her termination, does not supply sufficient evidence of causation. *See Bledsoe*, 42 F.4th at 589 (citing *Blizzard*, 698 F.3d at 289 and *Ford*, 782 F.3d at 767-70). The resulting inability to state a *prima facie* case for retaliation merits summary judgment in favor of Dykema.

## IV.    CONCLUSION

For the reasons set forth in this opinion, the Court **GRANTS**

Dykema's motion for summary judgment (ECF No. 20).

**IT IS SO ORDERED**.

s/Shalina D. Kumar
SHALINA D. KUMAR
United States District Judge

Dated: March 2, 2023